OPINION
{¶ 1} Defendant-appellant, Andre R. Williams, appeals the judgment of the Trumbull County Court of Common Pleas denying his petition for post-conviction relief. For the following reasons, we affirm the decision of the court below.
 {¶ 2} On August 15, 1988, George and Katherine Melnick were attacked in their home on Wick Street in Warren, Ohio. In September 1988, Williams and an *Page 2 
accomplice, Christopher Daniel, were indicted for the crimes. In 1989, Williams was convicted on three counts of Aggravated Felony Murder, based on the underlying felonies of Aggravated Burglary, Aggravated Robbery, and Rape. Each count contained three felony-murder death penalty specifications and one "course of conduct" death penalty specification. Williams was also convicted of Attempted Aggravated Murder, Aggravated Burglary, Aggravated Robbery, and Attempted Rape. Williams' convictions and sentence were upheld in State v.Williams, 74 Ohio St.3d 569, 1996-Ohio-91. Further details of Williams' crimes and trial are provided in State v. Williams (Mar. 24, 1995), 11th Dist. No. 89-T-4210, 1995 Ohio App. LEXIS 1111, reversed in part byWilliams, 74 Ohio St.3d 569.
 {¶ 3} Subsequent to Williams' conviction, the United States Supreme Court held that the execution of mentally retarded criminals violates the Eighth Amendment's ban on cruel and unusual punishments. Atkins v.Virginia (2002), 536 U.S. 304. In State v. Lott, 97 Ohio St.3d 303,2002-Ohio-6625, the Ohio Supreme Court addressed the implications of theAtkins decision on the execution of capital punishment in Ohio. The court adopted three criteria for establishing mental retardation, based on clinical definitions approved in Atkins: "(1) significantly subaverage intellectual functioning, (2) significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction, and (3) onset before the age of 18." Id. at ¶ 12. The court further held that, "[w]hile IQ tests are one of the many factors that need to be considered, they alone are not sufficient to make a final determination on this issue" and "there is a rebuttable presumption that a defendant is not mentally retarded if his or her IQ is above 70." Id. *Page 3 
 {¶ 4} On June 9, 2003, Williams filed a petition for postconviction relief, captioned Petition to Vacate Andre R. Williams' Death Sentence pursuant to Atkins v. Virginia, 122 S.Ct. 2242 (2002), State v.Lott, 97 Ohio State 3d 303 (2002), and Ohio Revised Code § 2953.21. Williams asserted that his death sentence was void or voidable on account of his mental retardation under the authority of Atkins andLott. In the alternative, Williams requested an evidentiary hearing on his petition to adduce evidence on the issue of his mental retardation.
 {¶ 5} In support of the petition, Williams referred the court to the testimony of Frank C. Goodman, Director of Student Services in Special Education for the Warren City School District. Goodman testified during the mitigation phase of Williams' trial that, in the fourth grade, Williams was enrolled in the Adjusted Curriculum Program/Developmentally Handicapped Program. Goodman testified that, in order to qualify for these programs, the student "must have a measured intelligence or IQ of 80 or below and have deficiencies in two areas of what is called adaptive behavior." Goodman also testified that, in 1983, when Williams was fifteen years old, his IQ was tested at 67.[1]
 {¶ 6} Williams attached the affidavit of Stacey Vail, his cousin, to his petition. Vail "interacted * * * consistently" with Williams from his early pre-school years until his conviction in 1989. Vail swore that "it was common, accepted knowledge in the Warren School system and neighborhood that Williams was severely challenged in [his] mental capacity and could not learn to cope on a day to day basis"; that Williams "would often times be unable to respond to basic inquiries from others and would stammer *Page 4 
incomprehensible babble on these occasions"; and that "she never observed any improvement in [Williams'] mental capacity at any time during the relevant period."
 {¶ 7} On June 27, 2003, the trial court ordered the Records Keeper for the Mansfield Correctional Institute to deliver to the court Williams' complete prison file.
 {¶ 8} On August 20, 2003, the State filed a Motion to Dismiss Andre Williams' Successive Post-Conviction Petition and/or Motion for Summary Judgment, asserting that Williams' petition may be dismissed without hearing. The State argued that Williams has never been diagnosed or described as being mentally retarded. The State cited the testimony from Goodman that Williams had a reported IQ of 76 when tested in 1973 (at age six) and at 78 when tested in 1978 (at age eleven).
 {¶ 9} The State also introduced substantial evidence that Williams is not mentally retarded. This included the 2003 opinion of Dr. Kenneth E. Covey, a prison employee, that Williams functions at a "level far above that of mental retardation"; Williams' mental health assessments while in prison; letters written by Williams from prison; and evidence that Williams does not exhibit any significant limitations in his adaptive skills or ability to care for himself while in prison, such as the fact that Williams drafts and files his own legal documents, fills out his own commissary sheets, maintained a webpage soliciting correspondents, seeks medical attention and administers his own medication.
 {¶ 10} On October 22, 2003, Williams filed a motion captioned Petitioner's Request for Appropriation of Funds, Appointment of Expert, an Order Granting Access to Institution. Williams requested the court to appropriate $3,000 to retain Dr. James Eisenberg of Painesville, Ohio, a forensic psychologist with experience in capital cases, *Page 5 
as an expert to investigate Williams' Atkins claim, and to authorize the forwarding of Williams' records to Dr. Eisenberg.
 {¶ 11} On October 24, 2003, the trial court granted Williams' motion and ordered Dr. Eisenberg to have "reasonable access" to Williams at the Mansfield Correctional Institution.
 {¶ 12} On April 23, 2004, Williams' filed his Petitioner's Motion Opposing Judgment and Brief in Support with Dr. Eisenberg's report attached as an exhibit.
 {¶ 13} Dr. Eisenberg reported that he had conducted a clinical interview with Williams and administered the Wechsler Adult Scale of Intelligence Test, 3rd Edition (WAIS-III), the Minnesota Multiphasic Personality Inventory, 2nd Edition (MMPI-2), and the Test for Memory Malingering (TOMM). Dr. Eisenberg found that Williams' "results on the WAIS-III place him in the borderline range of intelligence. * * * He is significantly impaired in all areas of intellectual functioning both verbal and nonverbal, though his testing does not place him in the mentally retarded range of intelligence. * * * There is no indication of malingering." Dr. Eisenberg concluded: "It is my preliminary opinion, with reasonable psychological certainty, that Mr. Williams does not currently meet the criteria for a diagnosis of mental retardation based on the Lott definition. Mr. Williams obtained a full scale IQ of 75 placing him in the borderline range of intelligence."
 {¶ 14} In addition to Dr. Eisenberg's report, Williams attached the following school records to his Motion Opposing Judgment: the results of Stanford-Binet Intelligence Scale test, administered in 1973, yielding an IQ score of 76 which places Williams "within the `educable mentally retarded' range of ability"; the results of a Wechsler Intelligence Scale for Children, Revised, administered in 1983, yielding an IQ *Page 6 
score of 67 and indicating that Williams possessed "limited academic aptitude" including "abstract reasoning, verbal fluency, and practical judgment in everyday situations," and "very weak" visual motor perceptual skills; and the results of a Vineland Social Maturity Scale, administered in 1983 "as a measure of adaptive behavior," indicating that Williams' "social age is similar to a nine year old [Williams was then fifteen] with deficiencies in communication, locomotion, occupation and self-direction."
 {¶ 15} On October 19, 2004, the trial court granted the State's motion to dismiss Williams' petition for postconviction relief. Williams appealed and this court reversed, holding that "the trial court's analysis confused the distinction between the dismissal of Williams' petition without hearing and the granting of summary judgment in the State's favor." State v. Williams, 165 Ohio App.3d 594, 2006-Ohio-617, at ¶ 21. This court remanded the case with instructions for the trial court to either deny the petition without hearing in accordance with R.C. 2953.21(C), to rule on the State's motion for summary judgment in accordance with the standards set forth in Civ. R. 56, or to hold an evidentiary hearing on Williams' petition in accordance with R.C. 2953.21(E). Id. at ¶ 27.
 {¶ 16} On July 20, 2006, Williams' filed a Petitioner's Motion for Jury to Determine Issue of Mental Retardation, seeking to have a jury empanelled to determine the issue of his mental retardation. and relying on the line of cases following Ring v. Arizona (2002), 536 U.S. 584, andApprendi v. New Jersey (2000), 530 U.S. 466.
 {¶ 17} On September 11, 2007, the trial court granted the State's Motion for Summary Judgment.
 {¶ 18} Williams timely appeals and raises the following assignments of error: *Page 7 
 {¶ 19} "[1.] The trial court erred in granting summary judgment and denying Appellant an evidentiary hearing on his petition for post-conviction relief, T.d. 186, thus depriving Appellant of liberties secured by U.S. CONST. amend. VI and XIV and Ohio CONST. art. I, § 1, 2,10, and 16, including meaningful access to the courts of this State.
 {¶ 20} "[2.] The trial court erred when it denied appellant a determination by jury as to whether appellant is mentally retarded and therefore exempt from execution pursuant to U.S. CONST. amend. VIII andXIV and Ohio CONST., art. I, § 9."
 {¶ 21} "Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief." R.C. 2953.21(A)(1)(a).
 {¶ 22} "Unless the petition and the file and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues * * *." R.C. 2953.21(E). "Before granting a hearing on a petition * * *, the court shall determine whether there are substantive grounds for relief." R.C. 2953.21(C).
 {¶ 23} "Within twenty days from the date the issues are raised, either party may move for summary judgment. The right to summary judgment shall appeal on the face of the record." R.C. 2953.21(D). "In the case of a petition which states a substantive ground for relief and which relies upon matters outside the record, the court should thus *Page 8 
proceed to a prompt evidentiary hearing, unless the prosecuting attorney files a motion for summary judgment in accordance with Civ. R. 56."State v. Milanovich (1975), 42 Ohio St.2d 46, 51.
 {¶ 24} Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "[t]he moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor." "In postconviction cases, only careful adherence to the provisions of Civ. R. 56 can assure that the rights and obligations of both parties are fairly treated and respected."Milanovich, 42 Ohio St.2d at 52.
 {¶ 25} A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. Grafton v.Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336; State v.Cleaver, 2nd Dist. No. 21855, 2007-Ohio-5977, at ¶ 6 (citation omitted). "Therefore, the trial court's decision is not granted any deference by the reviewing appellate court." Cleaver, 2007-Ohio-5977, at ¶ 6
(citation omitted).
 {¶ 26} We are aware that the Ohio Supreme Court has recently stated that the abuse of discretion standard review is the appropriate standard to apply in postconviction relief proceedings. State v. White,118 Ohio St.3d 12, 2008-Ohio-1623, at ¶ 45, citing State v. Gondor,112 Ohio St.3d 377, 2006-Ohio-6679, at ¶ 58. White and Gondor are distinguishable, however, on the grounds that in those cases the trial courts *Page 9 
ruled on postconviction relief petitions after holding evidentiary hearings. Thus, the Supreme Court held not only that the trial court's decision should be upheld absent an abuse of discretion, but also if that decision is supported by competent and credible evidence. Id.
 {¶ 27} In Gondor, the Supreme Court emphasized a postconviction relief proceeding is a "collateral civil attack on the judgment."2006-Ohio-6679, at ¶ 48 (citation omitted). Summary judgment proceedings are provided for by the Rules of Civil Procedure which allows a court to grant judgment when one party is entitled to judgment "as a matter of law." Civ. R. 56(C). Questions of law, by their nature, are reviewed under a de novo standard. Groob v. Keybank, 108 Ohio St.3d 348,2006-Ohio-1189, at ¶ 14 (citation omitted).
 {¶ 28} When an evidentiary hearing is held, the trial court receives evidence from the parties which it must weigh and evaluate as the trier of fact. Accordingly, its judgment is entitled to the more deferential standard of review. In a summary judgment exercise, the evidence is not weighed or evaluated, but, rather, is construed most strongly in favor of the nonmoving party. Gondor's directive to determine if the trial court's judgment is supported by competent and credible evidence is inapposite to this situation.
 {¶ 29} Likewise, the Supreme Court has held that a trial court, pursuant to R.C. 2953.21(C), may dismiss a peition for postconviction relief "without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient *Page 10 
operative facts to establish substantive grounds for relief." State v.Calhoun, 86 Ohio St.3d 279, 1999-Ohio-102, at paragraph two of the syllabus.
 {¶ 30} Calhoun is also distinguishable since the Supreme Court expressly stated that such dismissal was "pursuant to R.C. 2953.21(C)," rather than R.C. 2953.21(D) which addresses the use of summary judgment to dismiss a petition.[2]
 {¶ 31} For these reasons, we will apply the appropirate civil standard to avoid the anomolous situation of applying an abuse of discretion standard to a grant of summary judgment, i.e. a situation where the trial court is not free to exercise its discretion. See, e.g. State v.Cleaver, 2nd Dist. No. 21855, 2007-Ohio-5977, at ¶ 6 (applying a de novo standard of review to a trial court's grant of summary judgment in a postconviction relief proceeding).
 {¶ 32} In a postconviction relief proceeding, the petitioner bears the initial burden of submitting evidentiary materials demonstrating that there are grounds to believe that he is mentally retarded under the standards of Atkins and Lott. Lott, 2002-Ohio-6625, at ¶ 21 (the party asserting an Atkins claim "bears the burden of establishing that he is mentally retarded by a preponderance of the evidence"); State v.Scott, 92 Ohio St.3d 1, 4, 2001-Ohio-148 ("sanity and competence are generally presumed"); Calhoun, 86 Ohio St.3d at 284 ("[u]nlike the summary judgment procedure in civil cases, in postconviction *Page 11 
relief proceedings, the trial court has presumably been presented with evidence sufficient to support the original entry of conviction").
 {¶ 33} In the present case, Williams has failed to raise a genuine issue as to the three criteria for mental retardation established byLott. As noted above, these criteria are: "(1) significantly subaverage intellectual functioning, (2) significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction, and (3) onset before the age of 18." Lott, 2002-Ohio-6625, at ¶ 12.
 {¶ 34} The only criterion for which Williams met his burden is the third criterion. The evidence before the court does demonstrate that Williams had indications of mental retardation before the age of 18. In 1973, Williams was described by a school psychologist as functioning within the "educable mentally retarded" range of ability. A later evaluation determined Williams was functioning, with respect to "adaptive behaviors" such as communication and self-direction, at an age level several years behind his actual age. In 1983, Williams received a full scale IQ score of 67, which is below the score (70) at which he would be rebuttably presumed not to be mentally retarded.
 {¶ 35} With respect to the first two criteria, however, Williams failed to introduce any evidence of present disability. As recently emphasized by the Ohio Supreme Court, the definition of retardation adopted by Lott contemplates "substantial limitations in presentfunctioning." White, 2008-Ohio-1623, at ¶ 6, citing Atkins,536 U.S. at 308 (emphasis added). Likewise, this court has stated that, although the manifestation of mental retardation must occur before the age of 18, "the determination of whether a *Page 12 
defendant is mentally retarded under Atkins standards must be made in the present." State v. Lorraine, 11th Dist. No. 2006-T-0100,2007-Ohio-6724, at ¶ 21.
 {¶ 36} The only recent psychological evaluation of Williams, conducted by a psychologist of his choosing, concluded "with reasonable psychological certainty" that Williams "does not currently meet the criteria for a diagnosis of mental retardation based on theLott definition." Using the WAIS-III test, Dr. Eisenberg determined Williams to have a full scale IQ of 75, at which score he is rebuttably presumed not to be mentally retarded. Lott, 2002-Ohio-6625, at ¶ 12. Although Dr. Eisenberg acknowledges that Williams "is significantly impaired in all areas of intellectual functioning * * *, his testing does not place him in the mentally retarded range of intelligence."
 {¶ 37} It cannot be reasonably inferred from this evidence that Williams has significantly subaverage intellectual functioning and significant limitations in two or more adaptive skills. Williams' school records and evaluations, and the affidavit of his cousin Vail, only attest his intellectual capacity and functioning prior to 1989. They do not constitute competent evidence from which inferences may be made regarding his present mental capacity. Cf. Jones v. Florida (Fla. 2007),966 So.2d 319, 327 ("[B]ecause mental retardation is lifelong, a child may meet the criteria for the diagnosis because of developmental delays without being mentally retarded. Unless the person also meets the criteria as an adult, the individual is not mentally retarded. Thus, diagnosis of mental retardation in an adult must be based on present or current intellectual functioning and adaptive skills and information that the condition also existed in childhood."). *Page 13 
 {¶ 38} With respect to limitations in adaptive skills, Williams presented no evidence of current significant limitations. The State, on the other hand, presented considerable evidence of Williams' ability to function competently, managing his legal affairs, procuring medicine and other necessities, and maintaining personal correspondence. The trial court also noted the trial record of the underlying crimes demonstrates Williams' ability to function and act for his own self-preservation.
 {¶ 39} The first assignment of error is without merit.
 {¶ 40} In his second assignment of error, Williams maintains the issue of his mental retardation is a factual issue that enhances his sentence and, thus, must be determined by a jury. We disagree.
 {¶ 41} Under Ohio's statutory scheme, the penalty death may only be imposed "[i]f the trial jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors." R.C. 2929.03(D)(2). The Ohio Supreme Court has held that this procedure does not violate the Sixth Amendment under Ring or Apprendi. State v.Davis, 116 Ohio St.3d 404, 2008-Ohio-2, at ¶ 188 ("the jury's verdict, and not the judge's findings, made [the defendant] eligible for the death penalty").
 {¶ 42} In Lott, the Ohio Supreme Court expressly held that "the trial court shall decide whether the petitioner is mentally retarded using the preponderance-of-the-evidence standard." 2002-Ohio-6625, at ¶ 17. "In this regard, a trial court's ruling on mental retardation should be conducted in a manner comparable to a ruling on competency (i.e., the judge, not the jury, decides the issue)." Id. at ¶ 18. Cf. State v. *Page 14 
 Grell (Ariz. 2006), 135 P.3d 696, 702 (noting that "[p]roof of mental retardation is like proof of an affirmative defense").
 {¶ 43} The second assignment of error is without merit.
 {¶ 44} For the foregoing reasons, the decision of the Trumbull County Court of Common Pleas denying Williams' petition for post-conviction relief, is affirmed. Costs to be taxed against appellant.
MARY JANE TRAPP, J., concurs in judgment only with a Concurring Opinion.
COLLEEN MARY OTOOLE, J., dissents with a Dissenting Opinion.
[1] Williams was born May 1, 1967.
[2] The postconviction relief statute identifies three distinct ways in which the trial court may act on a petition: ruling on the petition after an evidentiary hearing; dismissing the petition without hearing; and conducting a summary judgment exercise. Allowing the trial court to grant summary judgment in the exercise of its discretion essentially nullifies the distinction between summarily dismissing the petition pursuant to R.C. 2953.21(C) and conducting a summary judgment exercise pursuant to 2953.21(D). Although the relationship between the three approaches is not entirely clear, it appears that where the petitioner fails to establish substantive grounds for relief, summary dismissal pursuant to R.C. 2953.21(C) is appropriate. Where the petitioner has established substantive grounds for relief, but is not entitled to relief as a matter of law, summary judgment pursuant to R.C. 2953.21(D) is appropriate. Otherwise, the trial court must hold a hearing pursuant to R.C. 2953.21(E).