[Cite as *State v. Roberts*, 2020-Ohio-4188.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2019-T-0089** |
| DONNA ROBERTS, | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2001 CR 000793.

Judgment: Affirmed.


*Dennis Watkins*, Trumbull County Prosecutor, *Christopher Becker* and *Ashleigh Musick*, Assistant Prosecutors, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*David L. Doughten* and *Robert A. Dixon*, 4403 St. Clair Avenue, Cleveland, OH 44103 (For Defendant-Appellant).


MATT LYNCH, J.

{¶1} Defendant-appellant, Donna Roberts, appeals the denial of her Amended Post-Conviction Petition on plaintiff-appellee, the State of Ohio's, Motion for Summary Judgment in the Trumbull County Court of Common Pleas. For the following reasons, we affirm the Judgment of the court below.

{¶2} Following her convictions for Aggravated Murder, Aggravated Burglary, and Aggravated Robbery, Roberts received, inter alia, the death sentence. The charges

arose from Roberts' role, as aider and abettor, in the shooting death of Robert Fingerhut by Nathaniel Jackson. The details of Roberts' crimes are set forth in *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 5-86.

{¶3} On August 20, 2008, Roberts filed a Petition to Vacate or Set Aside Sentence Pursuant to Ohio Revised Code §2953.21.

{¶4} On February 17, 2015, Roberts filed a Motion to Amend Post-Conviction Petition Pursuant to R.C. 2929.03(F). On August 19, 2015, the Petition was duly amended "per agreement of the parties."

{¶5} On August 28, 2015, the State filed a Motion for Summary Judgment.

{¶6} On June 5, 2019, Roberts filed a Memorandum in Support of the Amended Post-Conviction Petition.

{¶7} On November 20, 2019, the trial court granted the State's Motion for Summary Judgment and dismissed the Amended Post-Conviction Petition without hearing.

{¶8} On December 18, 2019, Roberts filed a Notice of Appeal. On appeal, she raises the following assignments of error:

> [1.] Petitioner Roberts' convictions and sentences are void and/or voidable because Petitioner was denied the effective assistance of counsel during the trial or first stage of her capital trial.
>
> [2.] If the affidavits provided in Petitioner's Motion to Vacate filed pursuant to R.C. §2953.21 establish a meritorious issue, may the trial court dismiss the petition without an evidentiary hearing.

{¶9} "Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United

2

States [or] any person who has been convicted of a criminal offense and sentenced to death and who claims that there was a denial or infringement of the person's rights under either of those Constitutions that creates a reasonable probability of an altered verdict * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief."  R.C. 2953.21(A)(1)(a); *State v. Calhoun*, 86 Ohio St.3d 279, 281-282, 714 N.E.2d 905 (1999).

{¶10} "Before granting a hearing on a petition * * *, the court shall determine whether there are substantive grounds for relief."  R.C. 2953.21(D).  "A trial court has the discretion to deny a postconviction petition without discovery or an evidentiary hearing if the petition, supporting affidavits, documentary evidence, and trial record do not demonstrate 'sufficient operative facts to establish substantive grounds for relief.'"  *State v. Broom*, 146 Ohio St.3d 60, 2016-Ohio-1028, 51 N.E.3d 620, ¶ 29, citing *Calhoun* at paragraph two of the syllabus.

{¶11} Either party may move for summary judgment in a postconviction proceeding.  "The right to summary judgment shall appear on the face of the record."  R.C. 2953.21(E).  When a trial court dismisses a petition for postconviction relief on a motion for summary judgment, the standards set forth in Civil Rule 56(C) apply: i.e., the motion may be granted if "there is no genuine issue as to any material fact" and "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."  The decision to grant summary judgment in a postconviction proceeding is reviewed de novo.

3

*State v. Williams*, 11th Dist. Trumbull No. 2007-T-0105, 2008-Ohio-3257, ¶ 31.

{¶12} "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. With respect to counsel's performance, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The element of prejudice means "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

{¶13} Roberts presents her claim for ineffective assistance of trial counsel as follows:

> Counsel did not provide an articulated defense for the Petitioner at trial. * * * Although counsel did cross-examine and challenge evidence throughout the culpability stage of trial, counsel failed to give an opening statement, present a video tape of the co-defendant Nate Jackson in which Jackson precluded Roberts' participation in the homicide, failed to present the co-defendant's claim of self-defense, obstructed the Petitioner's right to testify and failed to provide a closing argument to the jury. This confusing strategy would only suggest to the jury that the Petitioner was not professing her innocence. There is no articulable reasonable strategy for counsels' above actions or inactions at trial.

Petition to Vacate or Set Aside Sentence Pursuant to Ohio Revised Code §2953.21, at 15.

4

{¶14} The opening statement at trial was given by Roberts herself. She addressed the jury as follows:

> Good morning. Will the real Donna Roberts please stand up? Ladies and gentlemen, the real Donna Roberts stands before you. The testimony and evidence will establish that I played no part in [Fingerhut's] death. The Donna Roberts you'll hear portrayed in the letters and on those tapes is not the real Donna Roberts.
>
> My attorneys will test the State's evidence and ask important questions in cross-examination. Please, please listen carefully for those questions.
>
> Perhaps I'll have more to say later. Regardless, I am not guilty. I am not guilty. And you'll know that when this case is over.

{¶15} In support of her Petition, Roberts submitted an affidavit in which she stated in relevant part:

> 5. I did not know that my attorneys were not going to give an opening statement. They did give me a piece of paper with what they wanted me to say in opening statement. I practiced and did what they told me. They did not tell me that I was the only one who was going to speak.
>
> 6. I wanted them to argue self-defense in this case. Not for me, but Nate Jackson, my co-defendant. It was my understanding that Nate had argued self-defense at his trial. I thought that my jury should know that. To that end, I wanted Nate Jackson's video statement to be introduced into evidence because it is my understanding that he admitted that I had nothing to do with the offense. My attorneys did not discuss this strategy with them [sic]. I had paid them a lot of money I thought that they would do the right thing for me. They did not in this regard.
>
> 7. I wanted to testify on my behalf. I begged my attorneys to let me testify. They wavered, agreeing I should testify one day and changing their mind the next. When it came time for me to testify, they said no.
>
> 8. I did not ask my attorneys not to say anything in closing argument on my behalf. This strategy was not discussed with me. I was shocked when they did not say anything on my behalf. They just took charge of the case and I did not know what to say or what I

5

should do.

{¶16} With respect to opening and closing arguments, the face of the record in the present case does not raise issues of material fact with respect to counsel's performance or prejudice arising therefrom. It has often been observed that, "[w]hen performing a *Strickland* analysis, courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" (Citation omitted.) *State v. Goff*, 154 Ohio St.3d 218, 2018-Ohio-3763, 113 N.E.3d 490, ¶ 42. Given this presumption, "counsel's decision to waive opening or closing statements is generally viewed as a tactical one, even in a capital case." *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 139; *Bradley*, 42 Ohio St.3d at 144, 538 N.E.2d 373 (counsel's omission of an opening statement and the substance of closing arguments "must be viewed as tactical decisions and do not rise to the level of ineffective assistance"); *State v. Fouts*, 4th Dist. Washington No. 15CA25, 2016-Ohio-1104, ¶ 69 ("[c]ounsel's decision on whether to give an opening statement or closing argument and how to formulate and deliver them are tactical decisions").

{¶17} In the present case, the opening statement given by Roberts apprised the jury that she was asserting her innocence and that the defense would focus on challenging the State's evidence. The decision to omit any closing argument must be viewed as a tactical decision made by trial counsel. The affidavit submitted by Roberts provides no support either for counsel's deficiency or prejudice resulting from counsel's performance. At most, the affidavit evidences Roberts' personal dissatisfaction with counsel's trial strategy, rather than "specific errors by counsel that undermine confidence in the reliability of the verdict." *State v. Sanders*, 92 Ohio St.3d 245, 273, 750 N.E.2d 90

6

(2001).

{¶18} Apart from consideration of the affidavit, any argument with respect to opening and closing arguments would be, as noted by the trial court, precluded by res judicata. "Under the doctrine of res judicata, a defendant cannot raise an issue in a postconviction petition if he or she *raised or could have* raised the issue at the trial that resulted in that judgment of conviction or on an appeal from that judgment." *State v. Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, ¶ 92. Roberts did file a direct appeal in which claims regarding the effectiveness of trial counsel were raised. *Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, at ¶ 146-148. There is nothing in Roberts' Petition regarding opening and closing arguments which could not have been argued on direct appeal. *State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169 (1982), syllabus ("[w]here defendant, represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence dehors the record, res judicata is a proper basis for dismissing defendant's petition for postconviction relief").

{¶19} We further note that, in the penalty phase of her trial, Roberts forbade trial counsel from making arguments or presenting evidence in mitigation. In lieu of arguing for mitigation, Roberts chose to personally make an unsworn statement directly to the jury. The statement was made against the advice of counsel. Her expressed purpose in making the statement was "to expose people who have taken an oath to God to tell the truth, the whole truth, and then sat in that witness box and lied and cheated [and] abused authority, used their power to destroy lives," and "to demand racial equality in a courtroom." In the course of this statement she expressed her appreciation for her

7

attorneys described as "wonderful, brilliant men." She instructed her attorneys to quit filing motions on her behalf. Roberts also made mention of "the real Donna Roberts" as she had in her opening statement. In considering the performance of trial counsel with respect to opening and closing arguments, it is not unreasonable to infer that the character or personality of their client influenced the manner in which they chose to proceed at trial.

{¶20} Roberts also claims trial counsel was deficient for not introducing into evidence a video tape of Jackson being interviewed by the police in which Jackson asserts that he shot Fingerhut in self-defense and that Roberts "ain't had nothing to do with it at all, man." *See State v. Jackson*, 107 Ohio St.3d 300, 2006-Ohio-1, 839 N.E.2d 362, ¶ 69-72.

{¶21} The State counters that the video tape was inadmissible hearsay: "A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the truthworthiness of the statement." Evid.R. 804(B)(3). "The primary undertaking of a trial court's analysis [with respect to truthworthiness] is to apply the corroboration requirement in a manner to attempt to determine whether there are sufficient circumstances to overcome the motive to fabricate, whether because of fear, love, monetary inducement, etc." *State v. Cohen*, 11th Dist. Lake No. 12-011, 1988 WL 41545, *6.

{¶22} Nothing is proffered in Roberts' Petition that would serve as corroborating circumstances indicating the truthworthiness of Jackson's statement. On the contrary, other statements in the interview tend to undermine Jackson's claim that Roberts had

8

nothing to do with Fingerhut's murder. According to Jackson's statements in the interview, he contacted Roberts, with whom he was having an affair, after leaving the residence in Fingerhut's car. Roberts met Jackson and rented a room for him at a hotel. She purchased medical supplies and treated his finger which had been injured during the struggle with Fingerhut. Yet Jackson maintained Roberts knew nothing about the events that evening. Rather than being a disinterested statement, Jackson had to exculpate Roberts from any involvement or knowledge if his own claims of self-defense were to appear credible.

{¶23} Roberts claims that trial counsel was nevertheless ineffective for not attempting to introduce the video into evidence. "Even if the trial court had found that Evid.R. 804 would not allow its admission, counsel would have preserved the issue for appeal as the preclusion of the admission of such strong evidence of actual innocence and/or mitigation would have violated her right to present a defense." Appellant's brief at 15. Roberts relies on a line of United States Supreme Court cases recognizing an implicit constitutional right to present a complete defense. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment * * * or in the Compulsory Process or Confrontation clauses of the Sixth Amendment * * *, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986), quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). "This right is abridged by evidence rules that 'infring[e] upon a weighty interest of the accused' and are '"arbitrary" or "disproportionate to the purposes they are designed to serve."'" *Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006), quoting

9

*United States v. Scheffer*, 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998), quoting *Rock v. Arkansas*, 483 U.S. 44, 58 and 56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987).

{¶24} Roberts' argument falls short of demonstrating a genuine issue of material fact as to whether counsel was ineffective for not at least proffering the evidence. In the first instance, the Ohio Supreme Court has confirmed that Evidence Rule 403(B)(3) does not violate the right to present a complete defense:

> [W]e hold that the corroboration requirement of Evid.R. 804(B)(3) rationally serves a legitimate interest in the admission of trustworthy evidence, and therefore exclusion of a defendant's proffered evidence for lack of corroboration does not deprive a defendant of the right to present a complete defense. As we stated in [*State v.*] *Sumlin*, 69 Ohio St.3d [105,] at 111, 630 N.E.2d 681, "Through Evid.R. 804(B)(3), Ohio has addressed one of the principal concerns of cases such as *Chambers* [*v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)] which is that a criminal defendant's reliable evidence should not be excluded through application of hearsay rules that do not adequately protect due process rights. Evid.R. 804(B)(3) strikes a balance between hearsay statements against penal interest which are sufficiently trustworthy to be admissible and those which are not."

*State v. Swann*, 119 Ohio St.3d 552, 2008-Ohio-4837, 895 N.E.2d 821, ¶ 30.

{¶25} In the second instance, "[i]t is not ineffective assistance for a trial lawyer to maneuver within the existing law, declining to present untested or rejected legal theories." *State v. McNeill*, 83 Ohio St.3d 438, 449, 700 N.E.2d 596 (1998).

{¶26} The first assignment of error is without merit.

{¶27} In her second assignment of error, Roberts argues the trial court erred by dismissing her Petition without an evidentiary hearing. She asserts that she "included evidence outside the record to support her claim that she had not been afforded effective assistance of counsel during the first phase of trial of her capital trial." Appellant's brief at 21.

10

{¶28} "To warrant an evidentiary hearing in a postconviction proceeding, a petitioner must submit evidence outside the record that sufficiently establishes that the petitioner is entitled to relief on one or more asserted constitutional grounds." *Broom*, 146 Ohio St.3d 60, 2016-Ohio-1028, 51 N.E.3d 620, at ¶ 29. "Where ineffective assistance of counsel is alleged in a petition for postconviction relief, the defendant, in order to secure a hearing on his petition, must proffer evidence which, if believed, would establish not only that his trial counsel had substantially violated at least one of a defense attorney's essential duties to his client but also that said violation was prejudicial to the defendant." *Cole*, 2 Ohio St.3d at 114, 443 N.E.2d 169.

{¶29} In contrast to the standard for granting summary judgment, a trial court's decision as to "whether a defendant will even receive a hearing" is "entitled to deference" to which an abuse-of-discretion standard applies. *State v. Miller*, 11th Dist. Lake No. 2019-L-084, 2020-Ohio-3329, ¶ 8, citing *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 50-51.

{¶30} We have considered the import of Roberts' affidavit and Jackson's videotaped interview under the first assignment of error and concluded that these evidentiary materials did not raise a genuine issue as to whether Roberts had a viable claim of ineffective assistance. Accordingly, the State was entitled to judgment as a matter of law even construing the evidence in Roberts' favor. In light of this conclusion, it was certainly within the discretion of the trial court to dismiss the Petition without a hearing.

{¶31} The second assignment of error is without merit.

{¶32} For the foregoing reasons, the dismissal of Roberts' Amended Post-

Conviction Petition is affirmed. Costs to be taxed against the appellant.


TIMOTHY P. CANNON, P.J.,

MARY JANE TRAPP, J.,

concur.