**The STATE of Ohio, Appellee,**

v.

**WILLIAMS, Appellant.**

[Cite as *State v. Williams*, 165 Ohio App.3d 594, 2006-Ohio-617.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2004-T-0136.

Decided Feb. 10, 2006.

</div>

Dennis Watkins, Trumbull County Prosecuting Attorney, and LuWayne Annos, Assistant Prosecuting Attorney, for appellee.

John B. Juhasz, for appellant.

DIANE V. GRENDELL, Judge.

{¶ 1} Defendant-appellant, Andre R. Williams, appeals the judgment of the Trumbull County Court of Common Pleas denying his petition for postconviction relief. For the following reasons, we reverse the decision of the court below and remand the cause.

{¶ 2} On August 15, 1988, George and Katherine Melnick were attacked in their home on Wick Street in Warren, Ohio. In September 1988, Williams and an accomplice, Christopher Daniel, were indicted for the crimes. In 1989, Williams was convicted on three counts of aggravated felony murder, based on the underlying felonies of aggravated burglary, aggravated robbery, and rape. Each count contained three felony-murder death penalty specifications and one "course of conduct" death-penalty specification. Williams was also convicted of attempted aggravated murder, aggravated burglary, aggravated robbery, and attempted rape. Williams's convictions and sentence were upheld in *State v. Williams*, 74 Ohio St.3d 569, 660 N.E.2d 724. Further details of Williams's crimes and trial are contained in *State v. Williams* (Mar. 24, 1995), 11th Dist. No. 89–T–4210, 1995 WL 237092.

{¶ 3} Subsequent to Williams's conviction, the United States Supreme Court held that the execution of mentally retarded criminals violates the Eighth Amendment's ban on cruel and unusual punishments. *Atkins v. Virginia* (2002), 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335. In *State v. Lott,* 97 Ohio St.3d 303, 2002-Ohio-6625, 779 N.E.2d 1011, the Ohio Supreme Court addressed the implications of the *Atkins* decision on capital punishment in Ohio. The court adopted three criteria for establishing mental retardation from the *Atkins* decision: "(1) significantly subaverage intellectual functioning, (2) significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction, and (3) onset before the age of 18." Id. at ¶ 12. The court further held that "there is a rebuttable presumption that a defendant is not mentally retarded if his or her IQ is above 70." Id. Finally, the court stated that "any petition for postconviction relief [under R.C. 2953.21] specifically raising an *Atkins* claim must be filed within 180 days from the date of the judgment in this case [December 11, 2002]." Id. at ¶ 24.

{¶ 4} On June 9, 2003, Williams filed a petition for post-conviction relief, captioned "petition to vacate Andre R. Williams' death sentence pursuant to *Atkins v. Virginia,* [536 U.S. 304,] 122 S.Ct. 2242 [153 L.Ed.2d 335] (2002), *State v. Lott,* 97 Ohio State 3d 303 [2002-Ohio-6625, 779 N.E.2d 1011] (2002), and Ohio Revised Code § 2953.21." Williams alleged that his death sentence was void or voidable on account of his mental retardation under the authority of *Atkins* and *Lott.* In the alternative, Williams requested an evidentiary hearing on his petition to adduce evidence on the issue of his mental retardation.

{¶ 5} In support of the petition, Williams referred the court to the testimony of Frank C. Goodman, Director of Student Services in Special Education for the Warren City School District. Goodman testified during the mitigation phase of Williams's trial that, in the fourth grade, Williams was enrolled in the Adjusted Curriculum Program/Developmentally Handicapped Program. Goodman testi-fied that, in order to qualify for these programs, the student "must have a measured intelligence or IQ of 80 or below and have deficiencies in two areas of what is called adaptive behavior." Goodman had also testified that, in 1983, when Williams was 15 years old, Williams's IQ was tested at 67.

{¶ 6} Williams also attached the affidavit of Stacey Vail, Williams's cousin, to his petition. Vail swore that "it was common, accepted knowledge in the Warren School system and neighborhood that [Williams] was severely challenged in [his] mental capacity and could not learn to cope on a day to day basis"; that Williams "would oftentimes be unable to respond to basic inquiries from others and would stammer incomprehensible babble on these occasions"; and that "she never observed any improvement in [Williams'] mental capacity at any time during the relevant period."

{¶ 7} The state responded by filing a motion to dismiss Williams's successive postconviction petition and/or motion for summary judgment. The basis for the state's motion to dismiss Williams's petition was that Williams had failed to establish a prima facie case of mental retardation. In regard to the motion for summary judgment, the state argued that the evidence submitted with its motion "makes it patently obvious that Williams does not suffer from mental retardation."

{¶ 8} The state argued that Williams has never been diagnosed or described as being mentally retarded. The state cited testimony from Goodman that Williams's IQ was tested at 76 in 1973 and at 78 when tested in 1978. The state also introduced substantial evidence that Williams is not mentally retarded. This included the opinion of Dr. Kenneth E. Covey, a prison employee, that Williams functions at a "level far above that of mental retardation"; Williams's mental health assessments while in prison; letters written by Williams from prison; and evidence that Williams has not demonstrated any significant limitations in his adaptive skills or ability to care for himself while in prison, such as the fact that Williams drafts and files his own legal documents, fills out his own commissary sheets, maintained a website soliciting correspondence, seeks medical attention, and administers his own medication.

{¶ 9} On October 22, 2003, Williams filed a motion captioned "petitioner's request for appropriation of funds, appointment of expert, an order granting access to institution." Williams requested the court to appropriate $3,000 to retain Dr. James Eisenberg of Painesville, Ohio, as an expert to investigate Williams's *Atkins* claim, and to authorize the forwarding of Williams's records to Dr. Eisenberg from the Ohio Department of Rehabilitation. The trial court granted Williams's motion on October 24, 2003.

{¶ 10} Dr. Eisenberg's report was filed with the court on April 23, 2004, as an attachment to petitioner's motion opposing judgment and brief in support in response to the state's motion to dismiss Williams's petition.

{¶ 11} Dr. Eisenberg reported that he had conducted a clinical interview with Williams and had administered the Wechsler Adult Scale of Intelligence Test, 3rd Edition ("WAIS–III"), the Minnesota Multiphasic Personality Inventory, 2nd Edition ("MMPI–2"), and the Test for Memory Malingering ("TOMM"). Dr. Eisenberg found that Williams's "results on the WAIS–III place him in the borderline range of intelligence. * * * He is significantly impaired in all areas of intellectual functioning both verbal and nonverbal, though his testing does not place him in the mentally retarded range of intelligence. * * * There is no indication of malingering." Dr. Eisenberg concluded: "It is my preliminary opinion, with reasonable psychological certainty, that Mr. Williams does not currently meet the criteria for a diagnosis of mental retardation based on the

*Lott* definition. Mr. Williams obtained a full scale IQ of 75, placing him in the borderline range of intelligence."

{¶ 12} On October 19, 2004, the trial court denied Williams's petition for postconviction relief. The court found that Williams failed to meet his burden "to submit evidentiary documents containing sufficient operative facts to demonstrate his mental retardation." Absent substantive grounds for relief, Williams's petition was "subject to dismissal without hearing." The court also concluded that "the State's motion for summary judgment is well taken."

{¶ 13} The court found that the four IQ tests, school records, and cousin's affidavit "do not prove that [Williams] suffers from significant subaverage intellectual functioning" and that Williams "failed to argue or demonstrate *any* limitations, let alone *significant* limitations in any adaptive skills." The court then set forth, in detail, the evidence before it that Williams suffers from no deficiencies in adaptive skills.

{¶ 14} The trial court noted that Williams developed and executed a thought-out and logical plan for robbing the Melnick residence and that Williams demonstrated considerable self-direction in maintaining his innocence under police interrogation and assisting in his defense. Accordingly, the court concluded that Justice Stevens's concerns expressed in the *Atkins* decision, that mentally retarded defendants might "unwittingly confess to crimes they did not commit" and lack the ability "to give their counsel meaningful assistance," were not present in Williams's case. *Atkins*, 536 U.S. at 305, 122 S.Ct. 2242, 153 L.Ed.2d 335.

{¶ 15} The trial court also referred to the evidence produced by the state from the Mansfield Correctional Institution as "fortify[ing] this Court's impression of [Williams's] well-developed adaptive skills, particularly in the arena of communications, self-direction and self care." After reviewing Williams's commissary orders, medical and psychological records, pro se legal filings, website, and written correspondence, the court concluded that Williams demonstrates "an utter and total lack of deficiencies in the adaptive skill of communication."

{¶ 16} Williams timely appeals the trial court's judgment and raises the following assignment of error: "The trial court erred in denying Appellant an evidentiary hearing on his petition for post-conviction relief, thus depriving Appellant of liberties secured by U.S. Const. amend. VI and XIV, and Ohio Const. art. I, §§ 1, 2, 10, and 16, including meaningful access to the courts of this State."

{¶ 17} Pursuant to Ohio's postconviction relief statute, "[a]ny person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or

voidable under the Ohio Constitution or the Constitution of the United States * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief." R.C. 2953.21(A)(1)(a). "Before granting a hearing on a petition * * * the court shall determine whether there are substantive grounds for relief." R.C. 2953.21(C). "Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues * * *." R.C. 2953.21(E).

{¶ 18} The trial court may also grant summary judgment on a petition for postconviction relief, provided that "[t]he right to summary judgment shall appear on the face of the record." R.C. 2953.21(D).

{¶ 19} It is well settled that a court is not required to hold an evidentiary hearing on every petition for postconviction relief. *State ex rel. Jackson v. McMonagle* (1993), 67 Ohio St.3d 450, 619 N.E.2d 1017; *State v. Jackson* (1980), 64 Ohio St.2d 107, 110, 18 O.O.3d 348, 413 N.E.2d 819. Interpreting R.C. 2953.21(C), the Ohio Supreme Court has held that "a trial court properly denies a defendant's petition for postconviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *State v. Calhoun* (1999), 86 Ohio St.3d 279, 714 N.E.2d 905, paragraph two of the syllabus. When a petitioner has demonstrated sufficient operative facts to establish substantive grounds for relief, a court is required by R.C. 2953.21(E) to hold an evidentiary hearing.

{¶ 20} In reviewing the dismissal of a petition for postconviction relief, the reviewing court applies an abuse-of-discretion standard. *State v. Allen* (Sept. 23, 1994), 11th Dist. No. 93–L–123, 1994 WL 590342.

{¶ 21} In the present case, the trial court's analysis confused the distinction between the dismissal of Williams's petition without hearing and the granting of summary judgment in the state's favor. The trial court also impermissibly weighed conflicting evidence and made a number of findings of fact. Therefore, we must reverse the judgment and remand this cause for the court to address the issues of dismissal and summary judgment separately and to enter a new judgment on Williams's petition.

{¶ 22} The trial court was entitled to dismiss Williams's petition without hearing if the court found that "the petition, the supporting affidavits, the documentary evidence, the files, and the records d[id] not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *Calhoun,* 86 Ohio St.3d 279, 714 N.E.2d 905, paragraph two of the

syllabus. In making this analysis, the trial court has a limited ability to weigh the evidence proffered in support of the petition. "[A] trial court * * * may, in the sound exercise of discretion, judge the credibility of the affidavits in determining whether to accept the affidavits as true statements of fact." Id. at paragraph one of the syllabus. The analysis for dismissing a petition without hearing focuses on the evidence proffered in support of the petition, not the evidence proffered in the state's response.

{¶ 23} In a summary-judgment exercise, the court must construe conflicting evidence in petitioner's favor. Civ.R. 56(C). The state is entitled to summary judgment if "there is no genuine issue as to any material fact" and "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made." Id.

{¶ 24} In its findings of fact and conclusions of law, the trial court noted that Williams had submitted an IQ test result of 67, that the state submitted test results of 76 and 78, and that Dr. Eisenberg reported an IQ test result of 75. In considering this evidence, the trial court found "that Petitioner's three I.Q. scores over 70 outweigh his one I.Q. of 67" and, therefore, "the Court must presume Petitioner is not mentally retarded." Elsewhere, the court states that it "grants substantial weight to the recent report prepared by Dr. Eisenberg," finding his conclusion "particularly powerful evidence that Williams is not retarded." Rather than construing the evidence in Williams's favor, the court stated that it would "decide this claim by a preponderance of the evidence standard."

{¶ 25} Although R.C. 2953.21(D) requires that the right to summary judgment appear "on the face of the record," the trial court admits that it considered "evidence dehors the record." Some of this evidence "dehors the record" was unauthenticated documents submitted by the state that were allegedly handwritten or typed by Williams. See Civ.R. 56(C) and (E) regarding the evidence properly considered in a summary-judgment exercise. The trial court overruled Williams's objection to these documents by conducting its own analysis of their authenticity. The court's conclusion was that "pervasive" evidence existed "that, more likely than not, Petitioner personally authored the documents."

{¶ 26} In light of these problems in the findings of fact and conclusions of law, and mindful of "the need for reliability in the determination that death is the appropriate punishment," the trial court's judgment dismissing Williams's petition and/or granting the state summary judgment must be reversed. Woodson v. N. Carolina (1976), 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944. Cf. R.C. 2953.21(G); State v. Mapson (1982), 1 Ohio St.3d 217, 219, 1 OBR 240, 438 N.E.2d 910 (reason for requiring findings are to apprise petitioner of grounds for

judgment of trial court and to enable the appellate courts to properly determine appeals).

{¶ 27} On remand, the trial court must separately address the issues of dismissal and summary judgment. The trial court has three options before it. The first is to deny the petition without hearing, in accordance with the law as set forth in R.C. 2953.21 and the Ohio Supreme Court's decision in *Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905. The second is to act on the state's motion for summary judgment by applying the standards set forth in Civ.R. 56. The third is to schedule an evidentiary hearing on Williams's petition, at which time the trial court, as the trier of fact, is authorized to weigh the evidence and enter judgment. R.C. 2953.21(E); *State v. Lott*, 97 Ohio St.3d 303, 2002-Ohio-6625, 779 N.E.2d 1011, at ¶ 9. The trial court is encouraged to expedite treatment of this matter since today's decision necessarily delays appellate review of the merits of Williams's petition.

{¶ 28} For the foregoing reasons, the decision of the Trumbull County Court of Common Pleas denying Williams's petition for postconviction relief is reversed, and this matter is remanded for further proceedings consistent with this opinion.

Judgment accordingly.

FORD, P.J., and O'NEILL, J., concur.