[Cite as *State v. O'Neal*, 2017-Ohio-8755.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case Nos. 16-CA-35 |
| DAVID J. O'NEAL | : | 16-CA-37 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                                          Pleas, Case Nos. 12-CR-317 and
                                                          12-CR-445



JUDGMENT:                                        Affirmed




DATE OF JUDGMENT:                        November 30, 2017




APPEARANCES:

For Plaintiff-Appellee                              For Defendant-Appellant

JOSHUA S. HORACEK                          THOMAS R. ELWING
239 West Main Street                            60 West Columbus Street
Suite 101                                              Pickerington, OH  43147
Lancaster, OH  43130

*Wise, Earle, J.*

{¶ 1}   Defendant-Appellant, David J. O'Neal, appeals the August 25, 2016 denial of his petition for postconviction relief by the Court of Common Pleas of Fairfield County, Ohio.  Plaintiff-Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶ 2}   On July 27, 2012, the Fairfield County Grand Jury indicted appellant on one count of grand theft of a motor vehicle in violation of R.C. 2913.02, one count of receiving stolen property in violation of R.C. 2913.51, one count of vandalism in violation of R.C. 2909.05, and one count of obstructing official business in violation of R.C. 2921.31 (Case No. 12-CR-317).  These charges arose from appellant's actions on July 17, 2012, wherein he stole a police cruiser while fleeing from the police and then crashed the cruiser.

{¶ 3}   On September 28, 2012, the Fairfield County Grand Jury indicted appellant on one count of murder in violation of R.C. 2903.02, two counts of aggravated burglary in violation of R.C. 2911.11, and two counts of aggravated robbery in violation of R.C. 2911.01 (Case No. 12-CR-445).  Each of the counts carried a firearm specification under R.C. 2941.141.  One of the aggravated robbery counts was later amended to the lesser offense of robbery.  These charges arose from appellant's actions on July 17 2012, prior to the aforementioned fleeing from the police.  Appellant, with another individual or others, broke into the apartment of Destin Thomas with the intent to steal items, which resulted in a police officer shooting of Mr. Thomas.

{¶ 4}   The cases were joined for trial and a jury trial commenced on October 22, 2013.  For the five offenses in Case No. 12-CR-445, the state requested a jury instruction on complicity which was granted.  The jury found appellant guilty of all charges, including

the firearm specifications, as well as the offense of complicity to all five counts and the firearm specifications in Case No. 12-CR-445.

{¶ 5}   A sentencing hearing was held on November 22, 2013.  In Case No. 12-CR-317, the trial court merged the offenses of grand theft and receiving and the state elected sentencing on the grand theft.  The trial court sentenced appellant to an aggregate term of thirty-nine months in prison.  In Case No. 12-CR-445, the trial court merged the principal offender and complicity offenses, the robbery count with one of the aggravated burglary counts, and the aggravated robbery count with the murder count.  The state elected sentencing on the murder count and the two aggravated burglary counts.  The trial court sentenced appellant to three years mandatory on the firearm specifications, consecutive to a definite term of eighteen years, consecutive to an indefinite term of fifteen years to life, consecutive to the sentence in Case No. 12-CR-317.

{¶ 6}   Appellant appealed and this court affirmed appellant's convictions and sentence.  *State v. O'Neal,* 5th Dist. Fairfield Nos. 13-CA-90 and 13-CA-91, 2015-Ohio-537.

{¶ 7}   On October 22, 2014, the prosecuting attorney sent a letter to defense counsel providing notice that the Columbus Crime Lab had issued two new reports relating to the DNA findings presented at appellant's trial.  Both reports were attached to the letter.  The first report, dated July 24, 2014, indicated that the jury received invalid DNA findings from the state's expert in relation to three items of evidence, to wit: a knife, the victim's left shirt cuff, and the subject firearm, a Smith & Wesson revolver.  The second report, dated October 15, 2014, indicated that additional DNA findings testified to at trial were correct and were not being revised.

{¶ 8}  On December 2, 2014, appellant filed in each case a petition for postconviction relief regarding the DNA evidence, claiming the presentation of the evidence deprived him of a fair trial and due process of law.  A hearing on the petition for postconviction relief was held on December 10, 2015.  After extensive consideration and an exhaustive review of the record, the trial court issued a detailed decision on August 25, 2016, denying the petition.

{¶ 9}  The trial court first determined the newly discovered evidence came to light after the time limit set forth in R.C. 2953.21.  The trial court then found substantial evidence other than the contested DNA evidence to support the jury's guilty findings.  The trial court found appellant did not show by clear and convincing evidence that a reasonable factfinder would not have found him guilty but for the presentation of the DNA evidence.

{¶ 10} Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶ 11} "THE TRIAL COURT ERRED IN APPLYING THE CLEAR AND CONVINCING STANDARD FROM R.C. 2953.23(A)(1) IN EVALUATING APPELLANT'S PETITION FOR POSTCONVICTION RELIEF."

II

{¶ 12} "IT WAS AN ABUSE OF DISCRETION FOR THE TRIAL COURT TO DENY APPELLANT'S PETITION FOR POSTCONVICTION RELIEF WHERE PRESENTATION OF INVALID DNA EVIDENCE AT TRIAL DEPRIVED APPELLANT OF A FAIR TRIAL

AND DUE PROCESS OF LAW IN VIOLATION OF BOTH THE OHIO AND UNITED STATES CONSTITUTIONS."

III

{¶ 13} "IT WAS AN ABUSE OF DISCRETION FOR THE TRIAL COURT TO DECIDE APPELLANT'S PETITION FOR POSTCONVICTION RELIEF BASED ON FACTS WHICH WERE NOT PART OF THE RECORD."

I

{¶ 14} In his first assignment of error, appellant claims the trial court erred in applying a clear and convincing standard in determining the petition for postconviction relief. We disagree.

{¶ 15} The statutory framework for the postconviction relief mechanism is set out in R.C. 2953.21 et seq. R.C. 2953.21(A)(1)(a) provides in pertinent part:

> Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief.

{¶ 16} The timing of such filing is controlled by R.C. 2953.21(A)(2), which read at the time of appellant's filing in pertinent part: "Except as otherwise provided in section

2953.23 of the Revised Code, a petition under division (A)(1) of this section shall be filed no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction * * *."

{¶ 17} The transcript for appellant's direct appeal was filed on April 24, 2014. Pursuant to R.C. 2953.21(A)(2) in effect at the time, appellant had until October 21, 2014, to file a petition for postconviction relief. However, the letter from the prosecutor regarding the DNA evidence was sent one day after on October 22, 2014. As a result, appellant filed his petition for postconviction relief on December 2, 2014, pursuant to the timing requirements of R.C. 2953.23(A) which states:

(A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless division (A)(1) or (2) of this section applies:

(1) Both of the following apply:

(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

{¶ 18} Appellant on appeal is now arguing his petition should be considered timely filed pursuant to an amendment of R.C. 2953.21(A)(2). On March 23, 2015, the time limit for filing a petition for postconviction relief in R.C. 2953.21(A)(2) was amended from one hundred eighty days to three hundred sixty-five days. This provision, if applicable to appellant, would have extended appellant's filing deadline to April 24, 2015, rendering his filing timely. Appellee conceded that appellant "should receive the benefit of this revised statute, and that his petition should be considered timely filed." State's Hearing Brief filed December 8, 2015, at 2. However, this concession is not binding on the trial court.

{¶ 19} Appellant acknowledged in his December 2, 2014 petition at 15 that he filed outside the one hundred eighty day time limit of R.C. 2953.21(A)(2). He then set out the appropriate standard for the trial court to consider pursuant to R.C. 2953.23(A)(1)(a) and (b):

Under the particular circumstances here, the statutes governing petitions for post-conviction relief provide that a court may entertain a petition filed beyond the 180-day deadline. Consideration of a petition filed

beyond the 180-day deadline is appropriate if the petition relies on facts which the petitioner could not discover within the allowable time **and it is shown by clear and convincing evidence that without the constitutional error committed at trial, no reasonable person would have convicted the petitioner**. See R.C. 2953.23(A)(1)(a) and (b). These statutory requirements have been met in this case where the prosecuting attorney did not disclose until after the 180-day deadline that significant and decisive DNA evidence presented at the defendant's trial was invalid. (Emphasis added.)

{¶ 20} Appellant made no argument to the trial court with regard to seeking the benefit of the amended three hundred sixty-five day window. Appellant did not amend his petition, nor file a motion or make oral argument prior to or at the December 10, 2015 postconviction relief hearing that his petition should be considered timely and subject to the standard of review in R.C. 2953.21(A).

{¶ 21} The question of what version of the statute applies was answered by our brethren from the Eighth District in *State v. Jones,* 8th Dist. Cuyahoga No. 104667, 2017-Ohio-1052, ¶ 11: " 'This court considers the date of the triggering event, i.e., the filing of the postconviction petition, to determine which version of the statute governs.' *State v. Thomas*, 8th Dist. Cuyahoga No. 103784, 2016-Ohio-3327, ¶ 8-11." *Accord State v. Worthington,* 12th Dist. Brown No. CA2014-12-022, 2015-Ohio-3173, ¶ 43, fn. 4.

{¶ 22} The triggering event was the filing of the postconviction petition on December 2, 2014. The statute was changed to three hundred sixty-five days on March

23, 2015. It is the trial court's decision to determine whether appellant should receive the benefit of the revised statute despite appellee's concession. In this case, the trial court correctly determined the one hundred eighty day time limit applied. As a consequence, appellant's petition fell under the mandates of R.C. 2953.23(A).

{¶ 23} Upon review, we find the trial court did not err in applying the clear and convincing standard to determine the petition for postconviction relief.

{¶ 24} Assignment of Error I is denied.

## II, III

{¶ 25} In his second and third assignments of error, appellant claims the trial court abused its discretion in denying the petition for postconviction relief and in basing its decision on facts which were not part of the record, to wit: the trial court's independent review of the 911 recording. We disagree.

{¶ 26} Appellant is not contesting the denial of his petition for postconviction relief as it relates to his convictions under Case No. 12-CR-317, only his convictions under Case No. 12-CR-445. Appellant's Brief at 4.

{¶ 27} The 9-1-1 recording was played to the jury and was transcribed into the record of the trial transcript. T. at 150-153; State's Exhibit 7. Because of numerous notations of "inaudible" and "unidentified sounds," the trial court conducted its own review of the recording. In its decision filed August 25, 2016, the trial court noted, "after listening to the recording multiple times some additional information becomes apparent." Appellant argues, "the trial court's interpretation of the 9-1-1 call discerned facts that were not part of the record presented to the jury in this case." Appellant's Brief at 23. Because

the full 9-1-1 recording was played to the jury and the recording was admitted as an exhibit, we find this argument lacks merit.

{¶ 28} Our standard of review on a determination on postconviction relief is abuse of discretion. *State v. Williams,* 165 Ohio App.3d 594, 2006-Ohio-617, 847 N.E.2d 495 (11th Dist.). In order to find an abuse of discretion, we must find the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 29} Appellant argues the presentation of invalid DNA evidence at trial deprived him of a fair trial and due process of law.

{¶ 30} The facts of this case were succinctly summarized by this court on direct appeal in *State v. O'Neal,* 5th Dist. Fairfield Nos. 13-CA-90 and 13-CA-91, 2015-Ohio-537, ¶2-24:

Destin Thomas and Delshawn Walker were friends who shared an apartment at 7277 Brooke Boulevard, Reynoldsburg, Fairfield County in July 2012 in a large complex known as the Brentwood Lakes Apartment Community. The specific building Destin and Walker lived in was the Essex although the complex contained other buildings.

Destin and Walker both had an interest in music and were involved in audio engineering. They were known to record their own rap music and that of other artists. Walker owned expensive audio engineering equipment including, e.g., a MacBook computer, microphones, and "an Mbox mini,"

essentially tools of a mobile recording studio. Walker used the stage name "Shawn Vandz" in shows around the Columbus area.

In the early morning hours of July 17, 2012, Walker left the apartment for his day job where he worked from 8:00 a.m. to 2:00 p.m. Destin was asleep in his own bedroom when Walker left.

Shortly before 8:30 a.m., another resident of the apartment building observed two men outside the door of the apartment of Destin and Walker.

*Destin Thomas Calls 911 from his Bedroom*

Around 8:45 a.m., Destin called 911 to report a burglary in progress. Destin told the 911 operator he heard someone break into the apartment and they were now moving around inside. He was locked in his bedroom. The 911 tape was played at trial.

Ptl. William Kaufman of the Columbus Police Department responded to the call of the burglary in progress. As he approached the Brentwood Lakes apartment complex, radio traffic told him the suspect or suspects were still inside the apartment and the 911 dispatcher was listening to a confrontation between the suspects and the caller.

Kaufman pulled up in front of Destin's apartment, parked 2 or 3 spaces west of the apartment's "breezeway," and pulled his weapon. He could hear voices from the apartment but didn't see anyone at first. Suddenly two men burst out of the apartment running toward Kaufman and he immediately noticed the individual in front had a gun in his hand.

As the two approached Kaufman, the first man raised the gun. The second suspect was directly behind him. Kaufman fired two shots at the first man and he fell to the ground. The second man kept running and Kaufman followed him very briefly before returning to where the first man lay with the gun beside him on the ground. Kaufman called in the shooting over the radio.

As Kaufman stood over the man on the ground, he observed the man wore only shorts and no shirt or shoes. As another officer ran up to Kaufman, he stated, "I think this was the homeowner" because he realized it was unlikely someone would stage a home invasion wearing only shorts. The man on the ground, deceased, was identified as Destin Thomas. The gun beside him on the ground was found to be unloaded.

The gun was "covered in a lot of blood" and later revealed a mixture of the D.N.A. of two different individuals. The major donor was Destin Thomas. Appellant could not be excluded as the minor donor.

### Flight and Pursuit

The hunt for the man chasing Destin began in earnest. Kaufman did not get a good look at the suspect. A description was broadcast of a black male wearing a black hooded sweatshirt and gray sweatpants. * * *

One detective observed a suspect fleeing eastbound; the man wore a sleeveless black shirt and long black shorts. He jumped a fence when he saw officers in pursuit. Ptl. Billie Camp Donovan was one officer who got a

good look at the suspect. After chasing the suspect some distance, he escaped.

A maintenance man for a neighboring apartment building was outside when a man approached him and asked to use his cell phone. The man seemed nervous and had blood on his chin and was covered in scratches. After the man walked away, the maintenance man called police and reported the suspicious individual.

Another man was waiting for ride to work when he was approached by a young black male who looked "roughed up:" he had holes in his t-shirt and a cut on his chin. The young black male asked to use his cell phone and the two started walking together. The young black male asked where they were and the phone owner responded Pheasant Run Apartments. The pair observed a police cruiser approaching and the young black male asked the man to say they had been together all day.

Ptl. Billie Camp Donovan got out of the cruiser, approached the young black male, and said, "We've been looking for you all day." She recognized him as the suspect they pursued earlier in the day and identified him as appellant at trial.

Appellant threw down the cell phone and started running. He ran a short distance ahead of Donovan, jumped into her cruiser, and sped away. Donovan drew her weapon and fired at the cruiser, shattering the rear window. She radioed "10-3" for "officer in trouble." The suspect drove the cruiser a short distance, crashed into air-conditioning units of another

apartment building, jumped out and took off running again. The damage to the cruiser, a 2011 Ford Crown Victoria, totaled $3,907.42.

Officers continued to pursue appellant throughout the apartment buildings. A resident told an officer "I think the guy you're looking for is right outside my door laying down." As the officer ascended the stairs he heard running footsteps and observed appellant descend from the third floor, run to a balcony, and jump off. Appellant was identified as the same suspect officers pursued earlier although he was now shirtless. Once appellant hit the ground, he was apprehended.

*Appellant Denies Responsibility for Destin's Death*

Appellant was transported to Grant Hospital for treatment for his injuries. Ptl. Jesse Perkins heard appellant laughing as he was transported onto an elevator. Perkins asked what was so funny and appellant responded, "You all's the one that shot him" then "rap[ped] about homicide and shooting people."

*The Investigation: Physical Evidence Left Behind*

The officer returned to the apartment where appellant was observed hiding and discovered a discarded t-shirt. A pair of gray sweatpants was found outside another apartment.

Investigators searched Destin's apartment. The front door was broken with the deadbolt still in the "out" position. The condition of the door frame led police to conclude the door was kicked in.

The interior of the apartment was in disarray, especially in the bedroom identified as Destin's. The door lock on the bedroom door was shattered. A chair and suitcase had been knocked over; the mattress and box spring were pulled from the bed frame; and bloodstains were found on the mattress, walls, pillow, and floor.

More blood evidence was found immediately outside. In the shrubs, police found a bed sheet with blood on it. A pillar and the sidewalk also yielded drops of blood.

D.N.A. testing revealed appellant's D.N.A. on evidence recovered including the black t-shirt, the blood drops in the foyer of Destin's apartment, blood drops on the pillar outside the apartment, the bed sheet, Destin's pillowcase, and the mattress cover from Destin's bed. Other items revealed a mixture of D.N.A. from which neither Destin nor appellant could be excluded as donors: the gun and the sweatpants.

{¶ 31} This court also noted numerous incriminating texts and phone calls from appellant's cell phone. *Id.* at ¶ 25-29.

{¶ 32} "The jury was instructed upon complicity for all charges and specifications in addition to the charges as a principal offender," and was found guilty as charged. *Id.* at ¶ 36.

{¶ 33} On October 22, 2014, the prosecuting attorney sent a letter to defense counsel providing notice that two reports from the Columbus Crime Lab dated July 24, and October 15, 2014, indicated the jury received invalid DNA findings from the state's

expert, Raman Tejwani, Ph.D., Forensic Scientist III, in relation to three items of evidence, to wit: a knife, the victim's left shirt cuff, and the subject revolver. As appellant argues, most relevant is the crime lab reversal on his DNA discovered on the revolver, "the possession of which, was at issue for each count of the indictment in 12-CR-445." Appellant's Brief at 6.

{¶ 34} The original crime lab report regarding DNA on the revolver presented to the jury stated the following (State's Exhibit 3):

The DNA types obtained from the swabs collected from the S&W revolver, PR# 12-15483(004-A1-001), consist of a mixture. The DNA types associated with the major donor match the DNA types obtained from the bloodstain standard of Destin Thomas, PR# 12-15569(005). Based on the DNA types associated with the minor donor, David O'Neal cannot be excluded as a contributor at 10 of 15 loci. Based on the DNA types obtained from the swabs collected from the S&W revolver (minor donor), the approximate frequencies in the population are as follows: Caucasian- 1 in 1,052,000, African-American- 1 in 107,500 and Hispanic- 1 in 5,176,000. Note: Population estimates are based on frequencies at the loci D3S1358, D16S539, D19S433, vWA, D5S818 and Amelogenin.

{¶ 35} The revised DNA report regarding DNA on the revolver states the following (Postconviction Hearing State's Exhibit 202):

The DNA profile previously obtained from 004-A1-001 is consistent with a mixture of at least two individuals including a major male contributor. Destin Thomas cannot be excluded as the contributor of the major component in this mixture DNA profile. Due to the limited data obtained, no interpretations will be made for the minor component of this DNA profile.

{¶ 36} In finding appellant guilty of the charges including the firearm specifications, appellant argues "the only evidence that the appellant ever actually possessed the revolver is from the invalid DNA analysis that Dr. Tejwani presented to the jury." Appellant's Brief at 18. We find it was not necessary for appellee to prove that "appellant ever actually possessed the revolver."

{¶ 37} In its August 25, 2016 decision, the trial court noted at 15-16 that the jury found appellant guilty of all charges as the principal as well as complicit in committing the offenses. In reviewing the importance of the DNA evidence in relation to the revolver, the trial court noted the following at 16:

Each of the Firearm Specifications that Defendant was found guilty included the language "on or about his person or under his control, or on or about the person or under the control of his accomplice." Therefore, the State did not need to show that the revolver involved in this case belonged to the Defendant or was used by the Defendant. The State simply needed to prove that the revolver was brought to the crime scene by either the Defendant or an accomplice. The facts clearly show that the Defendant had

at least one other accomplice.   The identity of that accomplice is still unknown.

{¶ 38} We agree with the trial court's analysis.   Under R.C. 2923.03(A)(2), "[n]o person acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense."   "Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender.   A charge of complicity may be stated in terms of this section, or in terms of the principal offense."   R.C. 2923.03(F).

{¶ 39} As explained by our brethren from the Eighth District in *State v. Capp,* 8th Dist. Cuyahoga No. 102919, 2016-Ohio-295, ¶ 24:

The complicity statute requires that an accomplice be treated as though he was the person who committed every act of the underlying principal offense.   *State v. Kimble,* 7th Dist. Mahoning No. 06 MA 190, 2008-Ohio-1539, ¶ 27.   " 'In other words, the court can impute the elements of the principal offense, committed by the principal, to the aider and abettor.' "   *Id.,* quoting *State v. Jackson,* 90 Ohio App.3d 702, 705, 630 N.E.2d 414 (6th Dist.1993); *State v. Hurse,* 10th Dist. Franklin No. 14AP-687, 2015-Ohio-2656, ¶ 11.

{¶ 40} As outlined by the trial court in its decision at 18-20, sufficient evidence was presented to establish that the revolver in question was brought to the victim's apartment by either appellant or an accomplice.

{¶ 41} After reviewing "nearly 1,700 pages of trial transcripts, the 78 pages of the sentencing transcript," and all of the exhibits, the trial court gave an extensive analysis of the evidence presented notwithstanding the invalid DNA (Decision at 11-15), analyzed the importance of the invalid DNA on the knife, cuff, and revolver (Decision at 16-20), and concluded the following at 21-22:

Even after setting aside the evidence in question (the gun, knife and t-shirt), there remains substantial evidence of the Defendant's guilt. The Defendant has not shown by clear and convincing evidence that a reasonable factfinder would not have found Defendant guilty but for the presentation of that DNA evidence. Even without the DNA evidence on the gun, knife and t-shirt, there is strong evidence that it was the Defendant who broke into the victim's apartment. Unrepudiated DNA evidence still ties the Defendant to the apartment and the scene. The Defendant's actions that day, including his texts and fleeing from the police bolster this conclusion. Even without the DNA evidence tied to the revolver, solid circumstantial evidence exists that the Defendant or his accomplice brought the gun into the victim's apartment. The substantial weight of the evidence remains against the Defendant, and that evidence was more than enough to convict

the Defendant of the Murder, Aggravated Burglary, Aggravated Burglary,

and the three gun specifications.

{¶ 42} We concur with the trial court's analysis that appellant has failed to demonstrate "by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted." We find sufficient evidence in the record to support the trial court's decision.

{¶ 43} Upon review, we find the trial court did not abuse its discretion in denying appellant's petition for postconviction relief.

{¶ 44} Assignments of Error II and III are denied.

{¶ 45} The judgment of the Court of Common Pleas of Fairfield County, Ohio is hereby affirmed.

By Wise, Earle, J.

Baldwin, J. concur and

Hoffman, P.J. concurs separately.

EEW/db

*Hoffman, J., concurring*

{¶46} I fully concur in the majority's analysis and disposition of Appellant's assignments of error. I write separately only to address a concern I have relative to the standard to be applied by the trial court in reviewing Appellant's petition for post-conviction relief.

{¶47} Pursuant to R.C. 2953.21, upon the **timely** filing of the petition, before granting a hearing the trial court shall determine whether there are substantive grounds for relief. If the trial court finds substantive grounds exist, it shall proceed to a prompt hearing to determine whether to grant relief.

{¶48} If, however, the PCR is filed **untimely**, R.C. 2953.23 applies and determines whether the trial court may or may not "entertain" the petition. If it finds under R.C. 2953.23(A)(1) the petitioner was unavoidably prevented from discovery of the facts upon which he or she relies, the petitioner must then also show, by clear and convincing evidence, but for the constitutional error at trial, no reasonable factfinder would have found the petitioner guilty. Such standard is different from, and I believe substantively higher than, the standard the trial court would apply if the petition had been timely filed.

{¶49} I question the rationale of the legislature in creating a different, higher standard for a PCR that is untimely filed, but for which the petitioner was unavoidably delayed from discovery of the facts giving rise to the petition.

{¶50} The case sub judice presents the classic example. The now admitted error in the admission of the DNA evidence was not communicated to the petitioner until shortly after the then applicable 180 day time limit expired. While I concede the trial court may have reached the same conclusion it did after a R.C. 2953.21 hearing, the trial court was

prohibited from conducting such hearing having concluded it could not "entertain" the petition for petitioners failure to meet the heightened requirement found in R.C. 2953.23(A)(1)(b).  I question the wisdom of the legislature's creation of a heightened standard once the trial court has determined the petitioner has satisfied the condition set forth in R.C. 2953(A)(1).


_____

HON. WILLIAM B. HOFFMAN