[Cite as *State v. Osley*, 2018-Ohio-437.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-17-1025

       Appellee                          Trial Court No. CR0201602011

v.

Jerry Osley                                      **DECISION AND JUDGMENT**

       Appellant                         Decided: February 2, 2018

* * * * *

Julia R. Bates, Prosecuting Attorney, Claudia A. Ford, Andrew J. Lastra,
and Evy M. Jarrett, Assistant Prosecuting Attorneys, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**MAYLE, J.**

**{¶ 1}** Following a jury trial, defendant-appellant, Jerry Osley, appeals the

February 3, 2017 judgment of the Lucas County Court of Common Pleas, convicting him

of rape and unlawful sexual conduct with a minor. For the reasons that follow, we affirm

the trial court judgment.

# I. Background

{¶ 2} Jerry Osley was convicted of rape, a violation of R.C. 2907.02(A)(2) and (B), and unlawful sexual conduct with a minor, a violation of R.C. 2907.04(A) and (B)(3), in connection with his assault of 15-year-old B.T. According to the evidence presented at trial, Osley and B.T. were acquainted with each other through their neighborhood. Osley, who was 46, had been spending time with B.T.'s mother and her mother's boyfriend. On May 19, 2016, Osley told B.T. that his teenaged daughter wanted to meet her. He lured her to an abandoned house on Lagrange Street. The house was dark, so B.T. turned on her cell phone flashlight. Osley grabbed the phone from her, pushed her up against the wall, and began to strangle her. B.T. pulled out a knife that she carried for protection, but Osley grabbed it from her and forced her up the stairs, threatening to kill her.

{¶ 3} Once upstairs, Osley forced B.T. onto a mattress in one of the bedrooms. He held the knife in one hand, took hold of her hair with the other, and forced her to perform oral sex on him. While this was happening, B.T. felt behind her back and found a board. She slid it to her right hand, waited for the right moment, and then hit Osley in the face with it. She got up and threw an unhinged door onto him. She escaped from the house and ran down the street toward the home where she and her mother were staying. A friend called 9-1-1.

{¶ 4} While on the phone with 9-1-1, B.T. noticed a car pull into the parking lot across the street. Osley emerged from the vehicle with a scooter and began to chase her.

2.

B.T. ran through an alley and into the house. Osley got back into the car, which was described to the 9-1-1 operator as a black PT Cruiser.

{¶ 5} Officers responding to the 9-1-1 call spotted a Chevy HHR—a car with a body type similar to a PT Cruiser. It pulled into a gas station parking lot. The officers approached the vehicle and found Osley in the back seat. He was observed to have an injury to his forehead and blood on his coat, and he was carrying B.T.'s cell phone. B.T. identified Osley as the man who assaulted her.

{¶ 6} B.T. was treated at St. Vincent Hospital where she underwent a sexual assault nurse examination ("SANE"). As part of this examination, her mouth was swabbed for DNA. She also suffered abrasions to her right buttock, right hip, lower back, left flank, and mid-back, and photographs were taken of those injuries. A sexual assault suspect kit was performed on Osley at Toledo Hospital.

{¶ 7} The rape and sexual assault suspect kits were sent to the Bureau of Criminal Investigations ("BCI") for analysis, along with the victim's cell phone. No semen was identified in samples taken from B.T.'s mouth, but her saliva was identified in penile samples collected from Osley. Osley's blood was identified on B.T.'s phone.

{¶ 8} The jury found Osley guilty of both rape and unlawful sexual conduct with a minor. The trial court found that the convictions merged for purposes of sentencing, and Osley was sentenced to a prison term of ten years. Osley appealed and assigns the following errors for our review:

> I. The trial court erred to the prejudice of Appellant when it denied Appellant's oral motion for dismissal of the jury, or in the alternative for a

3.

mistrial, after Appellant made disruptive comments in front of the jury, prior to voir dire, and when both defense counsel and counsel for the state agreed that the jury had been tainted.

II. Appellant's conviction for rape was against the manifest weight of the evidence.

## II. Law and Analysis

{¶ 9} In his first assignment of error, Osley claims that prospective jurors were prejudiced when they witnessed an outburst just before voir dire during which he accused the venire of being racist and biased. He claims that the trial court should have dismissed the panel and replaced it with a new panel, or that it should have declared a mistrial. Osley also claims that his rape conviction was against the manifest weight of the evidence. We examine both of these assignments of error.

### A. Osley's Outburst in the Presence of the Venire

{¶ 10} As members of the venire were called to the jury box, but before voir dire began, Osley became concerned because there were no African-Americans among the venire. His attorney asked to approach the bench to voice Osley's concern to the court:

[Defense counsel]: Judge, with the initial 24 that we've had sworn in this afternoon, I just note that we have not had a person who is African-American. Rather, we have had possibly 21 or 22 people of White color and possibly two Hispanics.

Mr. Osley mentioned to me that he feels that this is bias, and I would ask that at some point in time an African-American—there is one in the

venire—be placed on the panel. Mr. Osley feels that this venire is biased, and he's asked me to voice that objection.

{¶ 11} The trial court explained that the venire is selected randomly and anonymously by "a computer poll," then the jurors' cards are shuffled so that the first 24 are not called in any order. The court indicated that there was no procedure for specifically replacing someone on the panel. It asked counsel if he had any case law supporting a method for replacing a panel member, and counsel conceded that he did not. The court assured him that the issue would be preserved for appeal.

{¶ 12} The court resumed the jury selection process, but was interrupted by Osley:

The defendant: Your Honor?

The court: Excuse me, Mr. Osley, I'm going to go through this process. Like we talked earlier, I'll be able to give you time to preserve something on the record, but this would not be the time.

The defendant: Why not? This is biased.

The court: Okay, so Mr. Osley—

The defendant: This is racial and biased.

The court: I'm going to ask that you—

The defendant: This is my life. This is racial and biased and you know it. This is my life.

The court: Mr. Osley, we've put the objection on the record.

The defendant: This is my life, Your Honor. This is racial and biased and you know it.

The court:  Okay.  I'm going to note on the record that we are giving—that the jury is present.

The defendant:  And racist and biased.

The court:  And that the Court is trying to instruct Mr. Osley at this time that we will address that at a different time.

The defendant:  Man, I need the news people here.  This is racist and biased.

The court:  So, Mr. Osley, the objection has been preserved.  So the objection from your initial request is preserved on the record.

The defendant:  I ain't paying for nothing.

The court:  Okay, [defense counsel]?

[Defense counsel]:  Yes, Your Honor.

The court:  Do you wish to go forward?

[Defense counsel]:  I do, Your Honor.  But I just—

The defendant:  He—he don't go forward because he knows it's racist and biased.  I don't mean no disrespect towards Your Honor.  Please believe me.  I'm a black dude fighting for my life.  This is racist and biased.

If you see a lot of white—black people up there and one white person in there, how do you think he'll feel?  Complete that.  Racist and biased.

{¶ 13} The court conferred with counsel at the bench outside the presence of the venire.  Defense counsel requested that the panel be removed and that the trial be

6.

rescheduled because of Osley's outburst. The court indicated that it would recess so that it could conduct research.

{¶ 14} The court informed counsel that it had reviewed a case where a mistrial had been denied despite the fact that the defendant had created a disruption in front of the jury. Defense counsel expressed that he did not believe it possible to rehabilitate the venire because Osley had accused the entire panel of bias. He insisted that it was necessary to "thank but excuse this panel." The state indicated that after consulting with its appellate division, it agreed that the jury had been tainted and it could not go forward. It urged that Osley be treated as an obstreperous defendant when the trial resumed.

{¶ 15} The trial court told counsel that it was concerned that excusing the venire would encourage defendants in future cases to deliberately taint juries when the ethnicity of the panel was not to his or her liking. It also noted that it had no control over what the ethnicity of the next panel may look like, thus the situation could be repeated. The court expressed that the situation could "be cleared up" by instructions to the jury and counsel could address concerns during their voir dire of the venire.

{¶ 16} Counsel for both Osley and the state maintained the position that the jury had been tainted, however, the state ultimately indicated that it would defer to the trial court's judgment. The court reviewed additional case law and decided to proceed with the current panel. When the venire returned to the courtroom, the trial court addressed it:

> Folks, we've put all the legal arguments on the record. I would like to ask you to disregard the outbursts from Mr. Osley. These are very intense situations for people, and just the beginning of a trial scenario, and

when you are in the stage of not knowing what's going to happen. So I'd like to be able to proceed.

There will likely be questions from counsel as to whether or not you believe you can proceed fairly and impartially on this matter. Everything about voir dire, which is the next session we are going to go through, is about speak the truth. So it's incredibly important that if we get to questions that you have concerns on, that you acknowledge that this may be difficult for you or not. * * *.

{¶ 17} Following closing arguments, in its charge to the jury, the trial court also instructed that they "are not to consider any statements made by the Defendant during voir dire for any purpose."

{¶ 18} Osley argues that the trial court abused its discretion when it denied his motion for mistrial and decided to proceed with the original venire. He claims that the state agreed with him at trial that the venire had been tainted. And he claims that the court's decision "created the unconscionable result of a trial proceeding with a tainted jury."

{¶ 19} The state argues that Osley never moved for a mistrial, thus his assignment of error must be reviewed for plain error. It also maintains that even if Osley did move for a mistrial, there was no evidence that the jurors who were selected were, in fact, tainted. It points out that during jury selection, defense counsel did not challenge for cause even one potential juror based on racial bias or enmity. It urges that the trial court instructed both the venire and the jury that they were to disregard comments made by

8.

Osley during voir dire, and a jury is presumed to follow the trial court's instructions. And it insists that if there was any error, Osley invited it and, therefore, cannot take advantage of the error.

{¶ 20} While Osley did not specifically move for a mistrial, he clearly asked that the venire be excused and that a jury be selected from a new venire. We will, therefore, treat his motion as one for a mistrial. *See State v. Sutton*, 9th Dist. Medina C.A. Nos. 2066, 2067, 1992 Ohio App. LEXIS 2916, f.n. 1 (June 3, 1992) ("The parties contended here and at trial that the dismissal of the venire did not constitute a mistrial. We disagree."). We review a trial court's denial of a motion for a mistrial under an abuse-of-discretion standard. *State v. Anderson,* 6th Dist. Lucas No. L-07-1351, 2008-Ohio-5791, ¶ 29. An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 21} Before deciding whether to go forward with trial, the court considered argument from counsel and conducted its own research. One of the cases it relied upon to support its decision to proceed was *State v. Chambers*, 10th Dist. Franklin No. 99AP-1308, 2000 Ohio App. LEXIS 3104 (July 13, 2000). As in the present case, the defendant in *Chambers* was upset about the racial makeup of the venire, and he said in front of the panel, "Oh, whole f***ing jury white. Come on now. All the jurors are white." *Id.* at * 5. In addition to this, during cross-examination of the state's first witness, Chambers pounded his fists on the table and had to be physically subdued by deputies and removed from the courtroom.

9.

{¶ 22} The court ordered the jurors out of the courtroom. When they were allowed back into the courtroom, it instructed them to disregard what they had witnessed and not to let it affect their deliberations. Chambers moved for a mistrial, but the trial court denied the motion. On appeal, he argued that this was error, and that "the jury was prejudiced by: (1) his swearing when the jury came out and his stating that they were all white; and (2) his pounding on the table and then being wrestled and taken to the holding cell by police officers." *Id.* at * 12.

{¶ 23} The Tenth District affirmed the trial court judgment. It began by recognizing that it is within the discretion of the trial court whether to grant or deny a motion for mistrial. It went on to observe that Chambers was seeking to take advantage of an error that he himself induced—i.e., an "invited error." Under the invited error doctrine, the court explained, a party may not take advantage of an alleged error that he induced or invited the trial court to make. It further noted that courts are reluctant to consider the disruptive conduct of a defendant to be a proper ground for a mistrial because to do so "'would provide a criminal defendant with a convenient device for provoking a mistrial whenever he chose to do so.'" *Id.* at * 14, quoting *State v. James*, 2d Dist. Clark No. 98-CA-54, 1999 Ohio App. LEXIS 506 (Feb. 19, 1999). The court held that "appellant cannot participate in numerous, intentional, disruptive acts and then seek the protection of the court from his own misbehavior." *Id.* The court also noted that the trial court admonished the jury to disregard Chambers' behavior and not to allow it to affect their deliberations. It observed that under Ohio law, a jury is presumed to follow instructions of the court and to obey curative instructions.

10.

{¶ 24} Other districts have considered similar issues and have reached the same conclusion. In *State v. McAlphine*, 8th Dist. Cuyahoga No. 79216, 2002 Ohio App. LEXIS 198, *23 (Jan. 24, 2002), for instance, the members of the jury pool overheard an exchange between McAlphine and the court in which McAlphine was complaining about his counsel and was being defiant of the court's orders. The trial court told McAlphine, "You're about to be gagged." *Id.* at * 17.

{¶ 25} McAlphine argued that he was prejudiced because the trial judge's admonition to him in front of the jury conveyed that he was biased. He argued on appeal that the trial court should have granted a mistrial. The Eighth District disagreed. It held that it would not allow McAlphine to take advantage of an invited error. It also noted that the trial court gave a curative instruction, and during voir dire, the jurors who were selected indicated a willingness to be impartial and to decide the case based on the evidence.

{¶ 26} Finally, in *State v. Manuel*, 5th Dist. Richland Case No. 92-CA-33, 1993 Ohio App. LEXIS 855, *8-10 (Feb. 5, 1993), the defendant created a disturbance in front of prospective jurors before voir dire "by way of verbal outburst" and had to be physically restrained and removed from the courtroom. *Id.* at * 8-9. Manuel argued that his outburst mandated the trial court to grant a mistrial because his right to a fair trial was prejudiced. The Fifth District disagreed. It concluded that Manuel's outbursts were deliberately designed to cause a mistrial, the trial court gave cautionary instructions to the prospective jurors to disregard his outbursts, and there was no demonstration that the jurors who actually sat on the case were prejudiced by the outbursts. *See also State v.*

11.

*Luton*, 2d Dist. Montgomery No. 10708, 1988 Ohio App. LEXIS 5113, *6-10 (Dec. 23, 1988) (affirming trial court judgment where defendant engaged in disruptive conduct in front of prospective jurors, ranting at the trial judge and flipping over the defense table); *State v. Bey*, 85 Ohio St.3d 487, 500-501, 1709 N.E.2d 484 (1999) (finding that defendant "created the outburst, so he may not persuasively argue that he is entitled to a mistrial or an instruction to the jury to disregard his own behavior").

{¶ 27} We agree with the conclusions reached by these courts. To begin with, the trial court instructed the venire that it was to disregard Osley's outburst. Counsel then had the opportunity to question each potential juror about possible bias and to challenge jurors on this basis. And during jury instructions, the trial court specifically instructed the jury that it was not to consider any statements made by Osley during voir dire. We presume that the jury followed the court's instructions. *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 192.

{¶ 28} In addition, we agree that Osley should not be permitted to benefit from the error he induced. "Under the invited-error doctrine, a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *State ex rel. Bitter v. Missig*, 72 Ohio St.3d 249, 254, 648 N.E.2d 1355 (1995). Osley had been disruptive during prior court appearances. The trial court specifically cautioned him to control himself in front of the jury. Before bringing in the venire, the trial court addressed Osley:

> The court: And do you feel like you can stay in control of your emotions?

12.

The defendant: Yes, ma'am.

The court: Okay. So understand if there is any outbursts, if you are getting angry with what's being said, you need to quietly write the information to your attorney if you have a question. You are not going to be able to have outbursts. Court security would have to react. It would ultimately make the jury see a part of your personality that you may not want to be showing in trial; do you understand?

The defendant: No, I got a good personality.

The court: Okay. Just understand we've had some outbursts—

The defendant: During the proceedings.

The court: --during pretrial status, so I wanted to make sure, if you are comfortable going forward, if you did take the medications, ultimately, that you are clear-headed and you are able to understand and assist your attorney today if you need to.

The defendant: Yes, ma'am.

{¶ 29} By failing to heed the trial court's warning and deliberately engaging in disruptive conduct, Osley invited error here. We agree with the trial court that to allow Osley to take advantage of this error would encourage defendants in future cases to cause disruptions when a venire is not to his or her liking.

{¶ 30} Osley seems to acknowledge that there exists case law adverse to his position, but he argues that a different result should be reached here because the state agreed at trial that the jury had been tainted. First, we note that while the state initially

13.

expressed its agreement with defense counsel that the venire had been tainted and that the trial should not proceed, it ultimately told the court that it deferred to whatever decision it made. But even if the state agreed with Osley, this did not bind the trial court or strip it of its discretion. *See State v. O'Neal*, 5th Dist. Fairfield Nos. 16-CA-35, 16-CA-37, 2017-Ohio-8755, ¶ 18 (finding that state's concession that appellant's petition should be considered timely-filed was not binding on the trial court). It was within the trial court's discretion to determine whether it was necessary to draw a new venire. We find no abuse of discretion in its decision.

{¶ 31} Accordingly, we find Osley's first assignment of error not well-taken.

### B. Manifest Weight of the Evidence

{¶ 32} In his second assignment of error, Osley claims that his conviction for rape was against the manifest weight of the evidence. He argues first that there was no semen found in the victim's mouth two hours after the rape, and he points out that the state's testimony indicated that semen typically remains present in a sexual partner's mouth for five to six hours after contact. He claims that the testimony did not explain how there could have been a rape here without some trace of his DNA in the victim's mouth.

{¶ 33} Osley also argues that the victim's version of events was implausible. Specifically, he claims that it was incredible that (1) B.T. was able to find something with which to hit Osley in a dark house while being forced to perform oral sex; (2) a 46-year-old man would jump out of a car and use a scooter to chase the victim around; and (3)

14.

B.T. would have gone with Osley to meet his daughter when up until that time, Osley had never spoken of having children.

{¶ 34} When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We do not view the evidence in a light most favorable to the state. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson,* 6th Dist. Lucas No. L–10–1369, 2012–Ohio–6068, ¶ 15, citing *Thompkins* at 388. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 35} Here, despite Osley's assertions to the contrary, there was an explanation provided for why Osley's DNA was not found in the victim's mouth. Alex Thiel, a forensic scientist with BCI, testified:

> Well, semen only does persist up to about five or six hours in the oral cavity. There are factors that can make it deteriorate faster. So if there is no ejaculation, if she's eaten or brushed her teeth or had any fluids, it doesn't last very long in that cavity because you are constantly producing saliva and your mouth is constantly washing itself out.

{¶ 36} As to the "implausibility" of B.T. finding a board with which to hit Osley, her account of Osley chasing her on a scooter, and her belief that Osley was taking her to meet his daughter, the jury saw the victim testify. They also heard the 9-1-1 call, listened to the scientific evidence, viewed the recording of Osley's police interview, saw photographs depicting both the victim's injuries and the items strewn about the abandoned house (which included a piece of wood like the one described by the victim), and heard from a number of other witnesses, including responding officers, the detective assigned to the case, the SANE nurse who examined B.T., and other fact witnesses. After weighing all of this evidence, the jury believed that Osley raped the victim.

{¶ 37} Although under a manifest-weight standard we consider the credibility of witnesses, we must nonetheless extend special deference to the jury's credibility determinations given that it is the jury who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14. Given the strength of the evidence here, we decline to disturb the jury's credibility determinations.

{¶ 38} We find Osley's second assignment of error not well-taken.

### III. Conclusion

{¶ 39} We find no error in the trial court's refusal to replace the venire or declare a mistrial following Osley's outburst in front of prospective jurors. We also find that Osley's conviction was not against the manifest weight of the evidence. Accordingly, we

find his two assignments of error not well-taken, and we affirm the February 3, 2017

judgment of the Lucas County Court of Common Pleas.  Osley is ordered to pay the costs

of this case in accordance with App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                              _____
                                                           JUDGE
James D. Jensen, J.

Christine E. Mayle, P.J.                    _____
CONCUR.                                             JUDGE

                                                     _____
                                                           JUDGE