[Cite as *State v. Martin*, 2018-Ohio-3244.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-T-0014** |
| DAVID MARTIN, | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2012 CR 00735.

Judgment: Affirmed.

*Dennis Watkins*, Trumbull County Prosecutor, *Christopher Becker* and *Ashleigh Musick*, Assistant Prosecutors, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*John B. Juhasz*, and *Lynn Maro*, Maro and Schoenike Co., 7081 West Boulevard, #4, Youngstown, OH 44512 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, David Martin, appeals the denial of his postconviction relief petition in the Trumbull County Court of Common Pleas. The issues before this court are whether res judicata bars a postconviction petitioner from raising claims that trial counsel was constitutionally ineffective during voir dire and jury selection when those claims are decided adversely to the petitioner by the state supreme court; whether trial counsel renders ineffective assistance by choosing to

present some but not all of the information available regarding a petitioner's childhood during the mitigation phase of a death penalty trial; and whether a petitioner may be denied discovery when his postconviction petition fails to set forth sufficient operative facts establishing substantive grounds for relief. For the following reasons, we affirm the decision of the court below.

{¶2} On September 11, 2014, Martin was found guilty of the following: Aggravated Murder with specifications of Aggravating Circumstances and a Firearm Specification in violation of R.C. 2903.01(A) and (F), R.C. 2941.14(C), R.C. 2929.04(A)(5) and (7), and R.C. 2941.145 (Count Two); Attempted Aggravated Murder with a Firearm Specification in violation of R.C. 2923.02(A) and (E)(1), R.C. 2903.01(B) and (F), and R.C. 2941.145 (Count Three); two counts of Aggravated Robbery with Firearm Specifications in violation of R.C. 2911.01(A)(1), (3), and (C) (Counts Four and Five); two counts of Kidnapping with Firearm Specifications in violation of R.C. 2905.01(A)(2) and (C)(1) and R.C. 2941.145 (Counts Six and Seven); and Tampering with Evidence in violation of R.C. 2921.12(A)(1) and (B) (Count Eight).[1]

{¶3} On September 17, 2014, the jury returned a verdict finding that the aggravating circumstances outweighed the mitigating factors and recommending the imposition of the death penalty for Aggravated Murder.

{¶4} On September 24, 2014, the trial court similarly determined that the aggravating circumstances outweighed the mitigating factors and that the sentence of

---

1. Martin was additionally convicted of Aggravated Murder with specifications of Aggravating Circumstances and a Firearm Specification in violation of R.C. 2903.01(B) and (F), R.C. 2941.14(C), R.C. 2929.04(A)(5) and (7), and R.C. 2941.145 (Count One). The State elected to proceed on Count Two.

death was an appropriate penalty for Aggravated Murder. For the remaining charges, the court sentenced Martin to an aggregate prison term of 61 years.[2]

{¶5} On March 22, 2016, Martin filed a Petition to Vacate or Set Aside Conviction and Sentence, based on the following grounds: "[t]he death sentence imposed * * * is void or voidable because [Martin] did not receive effective assistance of counsel during the trial phase of his capital trial, and the result was a less than impartial jury that returned a death verdict"; Martin "was denied due process of law, and liberties guaranteed by [the Ohio Constitution] when counsel failed to present mitigation evidence which had been discovered and by counsel's failure to discover some mitigation evidence"; and "[b]ecause [Martin] was denied the effective assistance of counsel in the selection of a jury and in the presentation of mitigation evidence, [his] sentence of death is 'cruel and unusual' because not reliably determined."

{¶6} On August 23, 2016, the State filed a Motion for Summary Judgment pursuant to Section 2953.21(D) of the Revised Code.

{¶7} On October 11, 2016, Martin filed a Response to State's Motion for Summary Judgment.

{¶8} On October 31, 2016, the State filed a Renewed Motion for Summary Judgment and Response to Petitioner's Response.

{¶9} On January 19, 2017, the trial court ruled as follows: "(1) Martin was represented by competent trial counsel during both phases of the trial in this matter; (2)

---

2. Martin was sentenced to the following terms of imprisonment: 11 years for Attempted Aggravated Murder and 3 years for the Firearm Specification (Count Three); 11 years for each count of Aggravated Robbery with 3 years for the Firearm Specifications (Counts Four and Five); 11 years for each count of Kidnapping with 3 years for the Firearm Specifications (Counts Six and Seven); and 36 months for Tampering with Evidence (Count Eight). The sentences for the Firearm Specifications were merged into a single three-year sentence to be served consecutively with the remaining sentences.

Trial counsel for Martin conducted an appropriate voir dire examination of all potential jurors through either the written jury questionnaire or through verbal voir dire; (3) Martin has not set forth evidence to demonstrate substantive grounds sufficient to grant a hearing on his post-conviction request for relief; (4) Martin is not entitled to a hearing on his post-conviction request for relief; (5) There are no genuine issues of material fact on which reasonable minds can disagree and therefore, summary judgment in favor of the State is appropriate."

**{¶10}** On February 13, 2017, Martin filed a Notice of Appeal.

**{¶11}** On September 13, 2017, the Ohio Supreme Court affirmed Martin's convictions and sentence. *State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, 90 N.E.3d 857.

**{¶12}** On appeal, Martin raises the following assignments of error:

**{¶13}** "[1.] The trial court erred in denying the petition without a hearing, for the petition and the evidentiary material appended to it clearly made out a *prima facie* case of a constitutional violation, thus depriving Appellant of the liberty secured by the United States Constitution, Amendment Six and Fourteen, and Ohio Constitution Article I, Sections 1, 2, 10 and 16, including meaningful access to the courts of this state."

**{¶14}** "[2.] The trial court erred in dismissing the petition for post conviction relief without permitting discovery to be conducted, thus depriving Appellant of the liberties secured by U.S. Const. Amend. XIV and Ohio Const. Art. 1 §§ 1, 2, 10, and 16 including meaningful access to the courts of this state."

**{¶15}** Martin's first assignment of error asserts that trial counsel rendered constitutionally ineffective assistance.

{¶16} "[A]ny person who has been convicted of a criminal offense and sentenced to death and who claims that there was a denial or infringement of the person's rights under either [the Ohio or United States] Constitutions that creates a reasonable probability of an altered verdict, * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief." R.C. 2953.21(A)(1)(a).

{¶17} "Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript." R.C. 2953.21(D).

{¶18} "Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending." R.C. 2953.21(F). "[E]ither party may move for summary judgment," provided that "[t]he right to summary judgment shall appear on the face of the record." R.C. 2953.21(E).

{¶19} In the present case, the trial court availed itself of divisions (D) and (E) of the postconviction relief statute, determining that there were neither substantive grounds for relief nor genuine issues of material fact. The standards for dismissing a petition under each division are distinguishable:

5

The trial court was entitled to dismiss [the] petition without hearing if the court found that "the petition, the supporting affidavits, the documentary evidence, the files, and the records d[id] not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." [*State v.*] *Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905, paragraph two of the syllabus. In making this analysis, the trial court has a limited ability to weigh the evidence proffered in support of the petition. "[A] trial court * * * may, in the sound exercise of discretion, judge the credibility of the affidavits in determining whether to accept the affidavits as true statements of fact." *Id.* at paragraph one of the syllabus. The analysis for dismissing a petition without hearing focuses on the evidence proffered in support of the petition, not the evidence proffered in the state's response.

In a summary-judgment exercise, the court must construe conflicting evidence in petitioner's favor. Civ.R. 56(C). The state is entitled to summary judgment if "there is no genuine issue as to any material fact" and "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made." *Id.*

*State v. Williams*, 165 Ohio App.3d 594, 2006-Ohio-617, 847 N.E.2d 495, ¶ 22-23 (11th Dist.); *State v. Hartman*, 2d Dist. Montgomery No. 27162, 2017-Ohio-7933, ¶ 16 (cases cited).

6

{¶20} "[A] trial court's decision regarding a postconviction petition filed pursuant to R.C. 2953.21 will be upheld absent an abuse of discretion when the trial court's finding is supported by competent and credible evidence." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 60; *State v. Clark*, 11th Dist. Trumbull No. 2017-T-0081, 2018-Ohio-794, ¶ 6 (purely legal issues, however, are reviewed de novo).

{¶21} "In a petition for post-conviction relief, which asserts ineffective assistance of counsel, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness." *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819 (1980), syllabus. Specifically, a petitioner must show "(1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, 90 N.E.3d 857, at ¶ 48.

{¶22} Also, relevant to the disposition of this appeal is the applicability of res judicata to petitions for postconviction relief. *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph seven of the syllabus ("[c]onstitutional issues cannot be considered in postconviction proceedings under Section 2953.21 et seq., Revised Code, where they have already been or could have been fully litigated by the prisoner while represented by counsel, either before his judgment of conviction or on direct appeal from that judgment, and thus have been adjudicated against him"); *State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169 (1982), syllabus.

7

{¶23} Martin's claims regarding trial counsel's ineffectiveness with respect to voir dire and jury selection have been adjudicated against him by the Ohio Supreme Court in the direct appeal of his conviction and sentence. *See Martin.*[3] Considering the same issues raised by Martin in his postconviction petition, the Ohio Supreme Court concluded: "In no claim has he shown that his trial counsel performed deficiently, nor has he established prejudice." *Id.* at ¶ 74. Thus, there was no error in dismissing Martin's petition to the extent it claimed counsel was ineffective as to jury selection. *State v. Steffen*, 70 Ohio St.3d 399, 410, 639 N.E.2d 67 (1994) ("[p]ostconviction review is a narrow remedy, since *res judicata* bars any claim that was or could have been raised at trial or on direct appeal").

{¶24} With respect to the ineffective assistance of counsel claim involving mitigation, Martin contends that trial counsel "had investigated Martin's childhood, upbringing and influences on his life" and that this information "certainly should have been presented and considered by the jury when deciding life or death." Appellant's brief at 27.

{¶25} At the mitigation hearing, the following testimony was presented on Martin's behalf:

---

3. Specifically, *Martin*, 2017-Ohio-7556, at ¶ 49 ("defense counsel rendered ineffective assistance by failing to inquire on voir dire as to prospective jurors' knowledge of [Martin's] alleged involvement in the hostage-taking incident" and "should have asked juror No. 6, whose husband was a Trumbull County reserve deputy sheriff, whether she had discussed the hostage situation with her husband and whether he had had contact with Martin"), ¶ 54 ("defense counsel did not question four jurors (Nos. 4, 8, 10, and 12) on pretrial publicity"), ¶ 59 ("defense counsel should have questioned juror Nos. 5 and 7 more deeply about their attitudes on the death penalty"), ¶ 63 (potential personal bias of Juror No. 9 who "had been a co-worker of [the victim] for about a month and had seen him at work on the day of the murder"), ¶ 69 (potential personal bias of Juror No. 2 who "lived 'a couple of streets' from the murder scene"), and ¶ 71 ("counsel did not exercise any peremptory challenges, even against the four jurors whom they had unsuccessfully challenged for cause").

Martin made an unsworn statement and called three witnesses: Alegra Martin, Lucretia Norton, and Landon Nicholson. Alegra Martin and Norton, Martin's cousins, remembered him as a child and testified briefly about his family, but neither witness had seen much of him in recent years. Nicholson testified about Martin's youth from approximately 1996 to 2000. Martin also introduced a 586-page Cuyahoga County Division of Children and Family Services ("CFS") file on his family covering the period 1986 through 1998.

*Martin*, 2017-Ohio-7556, at ¶ 148. The substance of this testimony is described at ¶ 149-162 of the Supreme Court's opinion.

{¶26} In his postconviction petition, Martin asserted that trial counsel was aware of "multiple family members who could have testified that * * * Martin was present when his mother was killed," or, "whether he was actually present or not, [to his] lack of grief or other counseling." Moreover, "evidence from a number of family members of the anger and frustration which [Martin] felt, which often caused him to act out, [was] discovered by * * * trial counsel, but * * * not presented to the jury." Also "not presented to the jury was evidence that [Martin] may have had gang involvement," which is significant because "research shows that gangs serve as psychological surrogate families." Finally, there was evidence "discovered but undeveloped and not presented to the trial jury * * * that both of [Martin's] parents were substance abusers who, like most substance abusers, focused only on their own physical, physiological, and psychological needs for the substance for which they are addicted."

9

{¶27} Martin's characterization of the mitigation evidence actually presented is misleading. That his parents abused drugs was well attested in the testimony presented to the jury. *Martin* at ¶ 150 ("both parents had drug habits"). Allegra Martin testified that her father would use drugs with Martin's father and that many of her cousins abused drugs. Norton testified that she had seen Martin's father high. Of Martin's father, Nicholson testified that, "besides staying high all the time," he "was [always] at a crack house somewhere." When asked if he was a positive influence on Martin, Nicholson replied "hell no."

{¶28} Martin's exposure to gang culture, if not his actual participation therein, was before the jury. *Martin* at ¶ 158 ("[t]he CFS file speaks of 'gang violence,' 'peer pressure,' and a community with 'areas * * * undesirable for [the] youth's well being'"). Nicholson gave explicit testimony regarding gang activity involving Donald Ray and "one of Cleveland's biggest gangs, [the] Dynamite Devils, [or] the DDs." Ray operated a boxing gym where Martin trained, "but all the activities that we [Nicholson and Ray] was [sic] in, it wasn't like we was hiding it or it wasn't like they couldn't see what we was doing." Nicholson also asserted that he was trying to serve as a role model for Martin, as it appeared that no one in particular looked out for Martin and that "he belonged to the streets."

{¶29} While Martin's trial counsel did not expressly state that his parents' substance abuse issues compromised their ability to parent him or that gang culture filled the void left by parental incompetence, such is the impression created by the evidence presented. *Martin* at ¶ 165 ("Martin lost his mother at an early age and

received little or no help dealing with that issue" and "at some point in Martin's teenage years, his father virtually gave up and consigned him to the influence of the streets").

{¶30} With respect to whether Martin witnessed his mother's murder at age four, both Alegra and Norton stated before the jury that he did witness the murder. On both occasions the State raised objections which were sustained. The trial court did not instruct the jury to disregard the testimony, but defense counsel clarified through subsequent questioning that neither witness knew this through firsthand knowledge. During a subsequent sidebar, the State proffered the detective who investigated the mother's murder as a rebuttal witness. Counsel for Martin offered to stipulate that Martin did not witness the murder, but wished to consult with his client before doing so. Ultimately, neither rebuttal testimony nor a stipulation was introduced into the record. There is no indication that the statements from Martin's father, brother, and aunt that Martin witnessed his mother's murder were of different quality than the testimony of Alegra and Norton, i.e., their knowledge was based on what they had "heard."[4]

{¶31} We agree with the trial court that the facts presented in Martin's postconviction petition fail to establish substantive grounds for relief and that summary dismissal of the petition was warranted for that reason as well as for the absence of material facts regarding trial counsel's constitutional effectiveness. Martin essentially asserts that counsel's presentation of mitigation evidence was deficient in light of the evidence that was available to counsel. The Ohio Supreme Court has recognized that

---

4. The unpresented statements regarding the mother's murder, as with the statements regarding Martin's gang activity, are not entirely consistent. For example, an aunt heard that Martin witnessed his mother's murder and walked home afterwards. His father heard that someone dropped Martin off at home after the murder. His father stated that Martin told him that the mother was murdered by a boyfriend but Martin's brother does not think so. Martin's girlfriend stated that Martin was a member of the Crips since childhood but his brother did not think he was in a gang.

11

"the mere failure to present mitigating evidence at the penalty phase of a capital trial does not itself constitute proof of ineffective assistance of counsel" and that "the omission of such evidence in an appropriate case could be in response to the demands of the accused or the result of a tactical, informed decision by counsel, completely consonant with his duties to represent the accused effectively." *State v. Johnson*, 24 Ohio St.3d 87, 91, 494 N.E.2d 1061 (1986); *State v. Keith*, 79 Ohio St.3d 514, 530, 684 N.E.2d 47 (1997) ("the presentation of mitigating evidence is a matter of trial strategy").

**{¶32}** In the present case, the additional information Martin claims should have been presented was wholly cumulative to information that was actually presented. It was certainly within trial counsel's prerogative to decide which witnesses would be most effective in presenting the circumstances of Martin's upbringing. *State v. Jackson*, 8th Dist. Cuyahoga No. 104132, 2017-Ohio-2651, ¶ 42 ("out-of-record evidence that is merely cumulative of, or alternative to, other mitigation evidence defense counsel presented does not provide substantive grounds for a claim of ineffective assistance of counsel at mitigation").

**{¶33}** Nor is there any indication that the failure to present additional cumulative information on Martin's childhood prejudiced Martin. The Ohio Supreme Court has acknowledged on more than one occasion that, in the estimation of mitigating factors, it has "seldom accorded strong weight to a defendant's childhood." *Martin* at ¶ 165, citing *State v. Murphy*, 91 Ohio St.3d 516, 547, 747 N.E.2d 765 (2001).

**{¶34}** In sum, our conclusion must be that of the Ohio Supreme Court in a case decided this year:

12

> It is unclear why defense counsel did not present additional testimony about appellant's background. But nothing in the record suggests that the absence of additional testimony was the result of inadequate investigation. Moreover, it is highly speculative whether additional testimony from these witnesses would have added anything to appellant's mitigation case or made any difference in the outcome of the penalty phase. *See State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 124.

*State v. Wilks*, __ Ohio St.3d __, 2018-Ohio-1562, __ N.E.3d __, ¶ 209.

**{¶35}** The first assignment of error is without merit.

**{¶36}** In his second assignment of error, Martin argues "the trial court erred in dismissing the petition without permitting Appellant to conduct discovery." Appellant's brief at 39.

**{¶37}** The Ohio Supreme Court "has never held that there is a right to discovery in postconviction proceedings," "[a]nd because R.C. 2953.21[5] is silent about discovery, the decision to grant or deny a request for discovery rests with a trial court's sound discretion." *State v. Broom*, 146 Ohio St.3d 60, 2016-Ohio-1028, 51 N.E.3d 620, ¶ 28.

**{¶38}** Martin's postconviction petition states that "Petitioner must be afforded the opportunity to conduct discovery to further substantiate the allegations and claims asserted in this petition." Martin does not, however, make specific discovery requests or otherwise describe what discovery is necessary to support his claims. To the contrary, he claims elsewhere in the petition that it is supported "with evidence *de hors*

---

5. Effective April 6, 2017, R.C. 2953.21 was amended to expressly provide for discovery in conjunction with the filing of postconviction petitions.

the record that contains sufficient operative facts to demonstrate the lack of competent counsel and the prejudice resulting from counsel's ineffectiveness." Rather, further discovery is sought so that, in the event an evidentiary hearing is granted, "the hearing is meaningful." As we affirm the dismissal of Martin's petition without a hearing, the claim that he was entitled to discovery in anticipation of such a hearing is without merit.

{¶39} The second assignment of error is without merit.

{¶40} For the foregoing reasons, the dismissal of Martin's petition for postconviction relief without a hearing is affirmed. Costs to be taxed against the appellant.


TIMOTHY P. CANNON, J., concurs,

THOMAS R. WRIGHT, P.J., concurs in judgment only.